# Machesney v. Pittsburgh & Connellsville Railroad Company, Appellant.

*Eminent domain—Railroads—Improvements after taking—Evidence—Damages—Witnesses—Experts—Competency—New trial.*

1. On appeal from an award of viewers in condemnation proceedings, the admission of evidence to show that subsequent to the appropriation, improvements had been made in the vicinity which tended to enhance the value of the land taken, as well as the admission of evidence that at the time of the trial, there was no other available real estate in the neighborhood to be obtained by defendant, was reversible error, as it may have influenced the jury to award damages on the theory that had defendant not taken plaintiff's land, plaintiff would have gained the benefit of the improved conditions.

2. In such case the court made no error in permitting an expert witness to be questioned as to whether he had not acted for the railroad company in acquiring a large amount of property in the neighborhood prior to the date of the appropriation, as such question did not necessarily indicate, as contended by the defendant, that the witness was being interrogated about acquiring property for a "special purpose," nor did the court abuse its discretion in refusing to permit the witness to be questioned on cross-examination, whether certain sales, which he had referred to as having taken place in the immediate vicinity, were not at a much less figure than the valuation placed by him on plaintiff's property.

3. In such case, it was error to permit an expert witness called for plaintiff to testify, over defendant's objection, concerning the value of plaintiff's property, where it appeared that the witness did not have such a knowledge of the holding or selling values of the properties in the neighborhood as the subject was reasonably susceptible of.

Argued Oct. 25, 1915.  Appeal, No. 162, Oct. T., 1915, by defendants, from judgment of C. P. Allegheny Co., Oct. T., 1913, No. 2316, on verdict for plaintiff in case of Caroline J. Machesney v. Pittsburgh & Connellsville Railroad Company, a corporation, now merged into Baltimore & Ohio Railroad Company in Pennsylvania.

Before Brown, C. J., Mestrezat, Potter, Moschzisker and Frazer, JJ. Reversed.

Appeal from the award of viewers. Before Evans, J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $38,994.00 and judgment thereon. Defendant appealed.

*Errors assigned* were the various rulings on evidence referred to in the opinion of the Supreme Court.

*John G. Buchanan,* with him *William Watson Smith* and *Ralph Longenecker,* for appellant.

*B. J. Jarrett,* with him *Willis F. McCook,* for appellee.

Opinion by Mr. Justice Moschzisker, January 3, 1916:

The plaintiff secured a verdict for damages suffered through the appropriation by the defendant, under its right of eminent domain, of certain real estate belonging to her; judgment was entered accordingly, and the defendant has appealed.

The property was formally appropriated and the defendant's bond filed on January 12, 1907. Viewers were not appointed until 1913, and the trial on the appeal from their report, taken by the defendant company, did not occur till April 26, 1915. At this trial a blue-print was offered, "showing the plaintiff's property and the portion thereof appropriated," which was accepted in evidence without objection. Subsequently a second blue-print was offered and accepted, under objection and exception to the defendant, and rulings relating thereto are complained of in two assignments of error, which we shall now consider in connection with another assignment. When a certain witness for the plaintiff was upon the stand, he testified that a construction, known as a "crib," had recently been built out into the river upon

which plaintiff's property fronted; whereupon counsel for the defendant objected to "the testimony in regard to any structures that have been built since the day of the condemnation, which was January 12, 1907." Notwithstanding this objection, the witness was permitted to testify that the building of the crib "improved" the property. This is the matter covered by the first assignment of error. When upon the stand, the witness had before him the second blue-print, and this subsequently was offered in evidence, "in connection with his testimony." The offer was promptly objected to, but, before the objection was ruled upon, the witness said that "the map showed the crib recently built by the United States......, in 1912." The objection to the map was then renewed, for the reason, inter alia, "because it showed improvements that had been made since the condemnation in this case." The objection was overruled and an exception noted. This is the matter complained of in the second assignment. Later in the trial, a real estate expert called by the defendant was permitted to testify, on cross-examination, under objection and exception, as follows: "Q.—Do you know of any other property within half a mile above or below this property, that can be bought, extending from Second avenue to the river? Q.—Any in the market? A.—I don't know of any, because I think it is all put to use." This is the matter complained of in the eighth assignment.

The jury viewed the premises and saw the "crib" referred to in the testimony, and the court below thought that, for this reason, the evidence complained of in the first two assignments was permissible; but we do not know why the testimony covered by the eighth assignment was admitted. When, in cases of this kind, the jury pay a visit of inspection, if a physical change in the immediate surroundings apparently affecting the property in question, appears upon the view, and the change, in point of fact, took place after the date of the

appropriation, then, and in such a case, if the trial judge deems it essential in order to avoid confusion, it is permissible for either party to show the fact that such change actually occurred after the property was taken by the defendant; but, ordinarily, evidence upon the point should not be permitted to go further than just indicated. We see nothing in the present case to justify a departure from this rule, and we can appreciate how it is quite possible that here the failure to confine the proofs to the condition of the property at or about the time of the appropriation might well have harmed the defendant. We say this, for nowhere in the charge do we find instructions which plainly would have tended to clear away any misapprehension upon the subject that might have been created in the minds of the jurors. In the first place, the existence of the "crib" does not appear to have been referred to in the charge; then, next, in connection with his instructions on the application of the rule as to the difference in the valuation before and after the appropriation, the trial judge does not seem to have told the jurors that they must confine their attention to the value of the property "immediately" before and after its taking by the defendant; in other words, it is quite likely, so far as the record shows, that the jury may have gone to their deliberations with the idea in mind that, since the "crib" (erected after the appropriation) had "improved" the property, and since, at the time of trial there was no available real estate in the neighborhood to be obtained, had the defendant not taken the plaintiff's land, the latter would have gained the benefit of these conditions, and hence he should be dealt with more liberally on that account.

It is true that the testimony complained of in the first assignment, although objected to, was admitted without an exception being taken; but subsequently, when the second blue-print was offered, "in connection with" the testimony in question, an exception was entered to the ruling then made. Since this plan was not

relevant for any apparent reason, and no specific purpose was stated when it was offered, it is necessary to search the preceding testimony in order to ascertain the purpose of its offer, and, in doing this, we must look back to the matter complained of in the first assignment, which matter was, in effect, re-offered when the plan objected to in the second assignment was proffered "in connection with" such testimony. Hence that testimony is, in effect, before us, and would have been actually before us had all of the matter covered by both of these assignments been combined in each; under the circumstances, we shall treat the case as though this course had been pursued, and, accordingly, these assignments are sustained.

The fourth and fifth assignments complain of rulings on the evidence. When a Mr. Hamilton, called by the plaintiff, was upon the stand, he was asked if he had not acted for "the railroad company in acquiring a large amount of property in the neighborhood prior to 1907"; this was objected to upon the ground that the witness was being interrogated about acquiring property "for a special purpose." The objection was overruled and an exception noted. We see no error in this ruling, for, in point of fact, the question did not necessarily indicate any "special purpose." On cross-examination the witness testified that he knew of the sales of other properties "right in this immediate vicinity," designating four such other sales. He was then asked this question: "And all of those sales were at a much less figure than the one you mentioned, weren't they?" the figure referred to being the valuation placed by him on the plaintiff's property. An objection to the question was sustained, and an exception noted for the defendant. We are not convinced of error in this ruling; such an examination is always largely within the control and discretion of the trial judge, and the present record shows that he permitted liberal cross-examination of several witnesses within the proper limits recently suggested by

us in Girard Trust Co. v. Philadelphia, 248 Pa. 179, 182, 183. Presumably the court below would have permitted a like cross-examination of the present witness; but the blanket question now before us, under the circumstances of the examination which preceded it, may well have been considered as one, the answer to which would have tended to confuse, rather than clarify, the case. These assignments are overruled.

The sixth assignment relates to the qualifications of a Mr. McElroy, called by the plaintiff as an expert on real estate values, and the seventh to the admission of his testimony concerning the value of the plaintiff's property. Perhaps from a technical standpoint, owing to the way in which the lack of qualification of this witness was developed, we should not be justified in sustaining the first of these assignments if it stood alone, but when the whole examination of Mr. McElroy is considered, it seems quite apparent that, when called in this case, he did not have such a knowledge of the holding or selling values of properties in the neighborhood as the subject was reasonably susceptible of; therefore, his testimony could not be characterized as "the best evidence available under the circumstances of the case" to show the market value of the plaintiff's property, which is the kind of proof required: White v. Western Allegheny R. R. Co., 222 Pa. 534, 537-8; see also Friday v. Penna. R. R. Co., 204 Pa. 405, 409-11; Rea v. Pittsburgh & Connellsville R. R. Co., 229 Pa. 106, 120, 122. Since, we have already ruled other specifications of error which call for a new trial, both of the present assignments will be sustained.

The judgment of the court below is reversed with a venire facias de novo.