# Kemble's Estate.

*Taxation—Assessment—Coal lands—Experts — Best evidence— Market value—Appeals from assessment—Burden of proof—Practice, C. P.*

1. In the assessment of coal lands in a county in the anthracite coal belt, the board of revision of taxes may call to its assistance coal mining experts.

2. Land must be assessed for taxation for what it would bring at a fair public sale after due notice.

3. The valuation of real estate for taxation must be determined on the basis of market value, or rather actual value limited and defined by market value.

4. Whenever land has a market value, that value is the test, and the best evidence thereof is the opinions of credible witnesses familiar with such value.

5. In tax assessments, the best available evidence must govern.

6. On an appeal from a tax assessment, the proceedings in the lower court are de novo.

7. While the assessment of the board of revision makes a prima facie case on appeal, it only remains so until overcome by evidence.

8. Where the evidence before the court as to market value is ample, and all in conflict with the board's valuation, the court, in the absence of other such evidence, must revalue the property according to the market value established.

9. Where witnesses for the owner of coal lands testify on an appeal from tax assessment that they are familiar with four public sales of coal land and a greater number of private sales, some very recent and in close proximity to the land in question, such witnesses are fully qualified to express an opinion as to market value.

10. In tax assessment cases, the court should find all material facts, but is not required to specifically answer requests submitted by the parties.

11. In such cases, the rule that the lower court's finding of facts is entitled to the same weight as the verdict of a jury, is not applicable where there is not sufficient evidence to support a verdict.

Argued April 21, 1924. Appeal, No. 21, Jan. T., 1925, by Pennsylvania Co. for Insurances on Lives, etc., from judgment of C. P. Schuylkill Co., Jan. T., 1923, No. 200-A, on appeal from tax settlement, in case of Assessment and Valuation of Lands, etc., of the Pennsylvania Company for Insurances on Lives and Granting Annuities, surviving trustee under the will of William H. Kemble, deceased. Before MOSCHZISKER, C. J., WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Reversed.

Exceptions to findings and rulings sur appeal from tax assessment.

The opinion of the Supreme Court states the facts.

Exceptions overruled in opinion by BERGER, J., to which KOCH, J., dissented. Pennsylvania Co. for Insurances on Lives and Granting Annuities, trustee, appealed.

*Error assigned* was, inter alia, decree, quoting it.

*W. K. Woodbury,* of *Woodbury & Woodbury* and *M. B. Saul,* of *Saul. Ewing, Remick & Saul,* with them *Edgar Downey,* for appellant.—The only measure of valuation recognized by law is market value as distinguished from actual value: or, differently expressed, actual value limited and defined by market value.

The method to be used in fixing the present market value of land for assessment purposes is similar to the method used in fixing the value of land in condemnation proceedings, and the rules governing the one class of cases are applicable to the other: Searle v. R. R., 33 Pa. 57; Reading & Pottsville R. R. Co. v. Balthaser, 119 Pa. 472; Dewey v. Coal Co., 236 Pa. 498.

The market value contemplated by the act of assembly relating to the assessment of lands is the price per acre which a willing seller is willing to take and a purchaser to pay: Erie City v. P. S. C., 278 Pa. 512; Rockhill I. & Coal Co. v. Fulton Co., 204 Pa. 44.

*Edmund D. Smith,* with him *C. A. Snyder,* County Solicitor, *John B. McGurl* and *Arthur L. Shay,* for appellee.

OPINION BY MR. JUSTICE WALLING, May 12, 1924:

The William H. Kemble estate, of which appellant is trustee, owns four hundred, and thirty-five acres of land in Hegins Township, Schuylkill County, of which the part here in question, amounting to one hundred and seventy-five acres, is taxed as coal land. In making the triennial assessment in 1922 the assessor, for purpose of

taxation, valued this coal land at $285 per acre, amounting to $49,875. This was increased by the county commissioners, acting as a board of revision and appeal, to $494 an acre, amounting to $86,450. The trustee of the Kemble estate appealed therefrom to the court of common pleas. For purpose of uniformity the board of revision based its assessment on sixty per cent of value; this, by agreement of counsel, the court further reduced to forty-five per cent; making the total valuation for taxation $64,837.50; from its final decree refusing to make other reduction, the Kemble estate has appealed.

Schulykill County is in the anthracite coal belt and the board of revision called to its assistance three coal mining experts (in which there was no impropriety: see Pardee v. Schulykill County, 276 Pa. 246), who, after investigation, submitted estimates of the quantity and value in place of the coal in the one hundred and seventy-five acre tract, placing such value at $824 an acre; in fact one of the experts made a higher valuation. The board accepted the $824 an acre as the basis of its valuation, reducing the same to sixty per cent thereof as above stated. When the case was heard in court the testimony of these experts accorded with their previous statements and was confined to the estimated actual value of the coal in place, no evidence being submitted on behalf of the county as to the market value of the coal land or even of the coal in place, or that the latter had such value. For appellant, three mining engineers and experts in coal lands and their value were called and after qualifying testified as to the market value of the coal land in question; one said $200 an acre, another $175 and the third $150. There is nothing in the record to contradict or discredit this testimony. It was given by well known citizens of the county, who, on cross-examination, fortified their opinions by reference to numerous public and private sales of coal lands which had taken place in the vicinity, thereby showing a market value for such property. It has been statutory require-

ment in this Commonwealth for very many years, sustained by an unbroken line of decisions, that land must be assessed for what it would bring at a fair public sale after due notice. "The law requires that the valuation of real estate for the purpose of taxation shall be determined upon the basis of market value, or rather actual value, limited and defined by market value. What the law requires cannot be disregarded no matter how desirable some method not authorized might prove to be. ......Scientific formulas, arithmetical deductions and mental contemplations, have small value in making assessments under our practical system of taxation. The market value of the separate tracts at public sale, after due notice, is the legal basis recognized by our statutes of determining the assessable value of real estate, and until the legislature changes this method, it is binding not only upon the taxing authorities but upon the courts as well": D., L. & W. R. R. Co. v. Luz. Co. Com'rs, 245 Pa. 515, 518; Lehigh & Wilkes-Barre Coal Co's. Assmt., 225 Pa. 267, 277. "We fully agree that the only standard of valuation recognized by law in making assessments is market value as distinguished from actual value; or, more accurately expressed, actual value limited and defined by market value. This is clearly shown by the Acts of 1841 and 1842, which require the valuation to be fixed upon the basis of selling price at a bona fide sale after due notice": Washington County v. Marquis, 233 Pa. 552, 558. To save valuable property, which has no known market value, from escaping taxation, some other method may be permitted. Under the extraordinary facts appearing in Thompson's App., 271 Pa. 225, because of the absence of better available evidence, we sanctioned a valuation fixed largely by the evidence of mining engineers as to the amount and value of the coal in place; in very exceptional cases the foot acre rule has also been recognized: Lehigh Valley Coal Co. v. Luzerne County, 255 Pa. 17, a method, however, not available here in any event because of the varying thickness of the

veins of coal. But wherever the property has a market value, that value is the test, and the best evidence thereof is the opinions of credible witnesses familiar with such value, as in the analogous case of property taken under the right of eminent domain, in which the owner's damages are estimated by the market value of the land taken as a whole, not by the actual or estimated value of its component parts. In Searle v. Lackawanna, etc., R. R., 33 Pa. 57, LOWRIE, C. J., (referring to the rejection of an offer to prove that there was $4,000 worth of coal under the land, about one acre), said: "We do not measure the value of land by such facts. Land may have $4,000 worth of coal per acre in it, and yet sell at $40.00 per acre......Moreover, the offer impliedly requires a degree of refinement in the measure of values, which seems to us totally incompatible with the gross estimates of common life. Though we might have the most accurate calculation of the quantity of coal in the land, yet, without knowing exactly the expense of bringing it to the surface and carrying it to market, and the amount likely to be lost in mining and conveying, and the times in which it would be brought out, and the market prices at those times, the quantity would not help us to the value of the land. The gross estimates of common life are all that courts and juries have skill enough to use as a measure of value. All other measures are necessarily arbitrary and fanciful." The same rule is restated in Becker v. Phila. & Reading R. R. Co., 177 Pa. 252, 260; R. & P. Co. v. Balthaser, 119 Pa. 472, 482, and other cases. See also the opinion of the court by Mr. Justice KEPHART in Erie City et al. v. Public Service Commission, 278 Pa. 512. The uncertainty of valuing land by its supposed mineral contents is shown in the instant case where appellant's witnesses estimate the quantity of recoverable coal at practically one-half of that estimated by appellee's witnesses. The land in the instant case contains virgin coal with no open mine and should be assessed at its present market value as shown by the

evidence: Coal & Iron Co. v. Co. Com'rs, 229 Pa. 460; and see Machesney v. Pbg. & C. R. R. Co., 252 Pa. 225.

The intrinsic value of the property may be of assistance in weighing conflicting evidence as to market value, or, as above stated, where there is no market value, but where the latter is shown by reliable evidence, it must control and the actual value be limited thereby. In tax assessments, as elsewhere, the best evidence available must govern. On the record here presented, the best, and, in fact, only evidence of market value is that of appellant's witnesses, and, under these circumstances, the evidence being worthy of credit, it should have been accepted. See Shannopin Coal Co. v. County of Greene, 280 Pa. 4. We are mindful of the rule that the lower court's finding of facts is entitled to the same weight as the verdict of a jury, and will not be reversed except for clear error (York Haven Water & Power Co's. App., 212 Pa. 622), but here there is no evidence that could support a verdict.

The trial court erred in holding that the prima facie case made out by the valuation of the board of revision was not overcome by the evidence. The proceedings in the lower court were do novo (Pennsylvania Stave Co's. App., 236 Pa. 97), and while the assessment of the board of revision made a prima facie case in favor of the appellee, it only remained until overcome by evidence (Pennsylvania Stave Co's. App., supra; Leh. Valley Coal Co. v. North'd Co. Com'rs, 250 Pa. 515), and where, as here, the evidence before the court as to market value is ample and all in conflict with the board's valuation, the court, in the absence of other such evidence, must revalue the property according to the market value established. In tax cases, like all others, courts must be guided by the evidence in determining what are proper valuations: Pennsylvania Stave Co's. App., supra. There is in the instant case no finding or even suggestion that appellant's witnesses are not credible.

The trial court also erred in holding, in effect, that not enough sales of coal lands in the vicinity appeared to support a market value based thereon. At least two of appellant's three witnesses had sufficiently qualified as to knowledge of sales and values in another case just previously tried and were therefore not here fully examined on that question; yet they do mention at least four public sales of coal lands and a greater number of private sales, some very recent and in close proximity to the land in question. This fully qualified them to express opinions as to market value. See White v. Alleghany R. R. Co., 222 Pa. 534; Michael v. Crescent Pipe Line Co., 159 Pa. 99; Friday v. Penna. R. R. Co., 204 Pa. 405. The trial judge properly so ruled and later refused to strike out their evidence, the effect of which evidence was to show appellant's coal land had a market value and what it was.

In tax assessment cases the court should find all material facts, but is not required to specifically answer requests submitted by the parties: see Kuhn v. Buhl, 251 Pa. 348; Com. v. School Dist. of Altoona, 241 Pa. 224.

A motion to quash the appeal was made by appellee, assigning many reasons therefor, but none fatal. The statement of questions involved covers the propositions on which the case turns, as do some assignments of error; the others we need not consider.

The motion to quash the appeal is refused, the decree is reversed and the record is remitted that the trial court may grant such further hearing as it deems proper and determine the case in accordance with this opinion; costs of the appeal to be paid by appellee.