# Appeal of Pennsylvania Co. for Insurances on Lives and Granting Annuities.

*Taxation—Assessment for county taxes—Board of revision of taxes—Assistance of experts—Evidence—Coal lands—Prima facie case—Appeals—Opinion of witnesses—Experts—Market value.*

1. A county board of revision of taxes may be aided by the advice of experts.

2. On appeal to the common pleas, the assessment as made by the board establishes a prima facie case.

3. The proceedings on such appeals are de novo, and the fairness of the valuation is assumed.

4. In the absence of competent evidence to show the incorrectness of the assessment, or that the action of the board was arbitrary and in disregard of the owner's rights, it is conclusive, yet when such evidence is produced, it cannot be overlooked.

5. If such evidence is sufficient, and the witnesses giving it are credible, a prima facie case made out by the production of the assessment rolls falls, and it becomes the duty of the court to revalue the property according to the market value shown.

6. By market value is meant the amount of money which a purchaser willing but not obliged to buy would pay to an owner willing but not obliged to sell the land, taking into consideration all uses to which the property is adapted and might in reason be applied.

7. The price which the land would bring at a fair sale between parties dealing on equal terms, may be shown by witnesses who have knowledge of property similarly situated for like use, and opinions based on sales of such are admissible to establish the worth of the one in question. Testimony of this kind is not limited to experts.

8. The standard of qualification of witnesses called to establish worth must not be so high as to exclude the only available testimony.

9. In determining the value of coal lands for taxation it is reversible error to exclude the testimony of mining engineers acquainted with the property, the vein of coal upon it, the surrounding workings, and the sale of one tract similarly situated and carrying the same vein of coal, though located some miles distant.

10. In such case it may be shown that efforts had been made to sell the property in question, both privately and publicly, at a price specified; and the holding price of other properties similarly situated may also be shown.

*Evidence—Credibility—Witness—Discrediting witness—Party not always bound by statement of his own witness.*

11. As a general rule a party cannot be permitted to impeach the veracity of his own witness, yet he may disprove the facts to which his witness has testified.

Argued November 26, 1924. Appeal, No. 31, Jan. T., 1925, by Pennsylvania Co. for Insurances on Lives, etc.,

from order of C. P. Schuylkill Co., Jan. T., 1923, No. 4-a, overruling exceptions to findings and rulings on appeal from tax assessment, in case of the Appeal of Pennsylvania Company for Insurances on Lives and Granting Annuities, residuary trustee under will of I. V. Williamson. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Appeal from tax assessment. Before BERGER, J.

The opinion of the Supreme Court states the facts.

Exceptions to rulings and findings. Exceptions dismissed. Pennsylvania Company for Insurances on Lives and Granting Annuities, trustee, appealed.

*Errors assigned* were various rulings on evidence, and decree, quoting record.

*Geo. M. Roads* and *M. B. Saul,* of *Saul, Ewing, Remick & Saul,* with them *P. B. Roads,* for appellant.—The market value of land is not a question of science and skill upon which only experts can give an opinion: Langford v. Light Co., 43 Pa. Superior Ct. 394; Penna. & N. Y. R. R. v. Bunnell, 81 Pa. 414; Curtin v. R. R., 135 Pa. 20; O'Brien v. Ry., 194 Pa. 336; Rea v. Ry., 229 Pa. 106; White v. Ry., 222 Pa. 534.

The witnesses were qualified: Pittsburgh, etc., Ry. v. Vance, 115 Pa. 325; Mineral R. & M. Co. v. Comrs., 229 Pa. 436.

The price at which an owner holds his property is evidence tending to establish the market price of land for taxation purposes: Michael v. Pipe Line Co., 159 Pa. 99; Gorgas v. Phila., etc., Co., 215 Pa. 501; Smith v. Ry., 205 Pa. 645; Fessler v. G. & W. Co., 69 Pa. Superior Ct. 331; Phila. & Reading C. & I. Co. v. Comrs., 229 Pa. 460.

There is an exception to the rule that a party may not discredit his own witness by proving contradictory

72 PENNA. CO. FOR INS. ON L. & G. ANNUITIES, Appeal.

evidence: Stockton & Stokes v. Demuth, 7 Watts 39;
Penna. R. R. v. Fortney, 90 Pa. 323.

*Edmund D. Smith,* with him *C. A. Snyder,* County
Solicitor, *John B. McGurl* and *Arthur L. Shay,* for ap-
pellee.—The competency of an expert witness is for the
determination of the court: Gordon v. Traction Co., 264
Pa. 461.

Further, the average price of coal lands in Schuyl-
kill County furnishes no criterion for establishing what
land would bring if put up at a public sale.

Where the facts are of a character that render them
susceptible of full and adequate development so that
their bearing upon the issues involved can reasonably be
estimated by a jury, expert testimony in the nature
thereof is not essential and therefore not admissible:
Chambers v. Mesta Machine Co., 251 Pa. 618; Gandy v.
Klaw, 269 Pa. 320; Com. v. Buckman, 82 Pa. Superior
Ct. 428.

The method pursued by the board of revision, if com-
petent at all, may not be proved by one of its employees
or agents. The minutes of the board, and the members
constituting it, were available and they furnish the best
and only competent evidence on the matter: Dinger v.
Friedman, 279 Pa. 8.

OPINION BY MR. JUSTICE SADLER, January 5, 1925:

Appellant, residuary trustee under the will of I. V.
Williamson, is the owner of a certain tract of land in
Schuylkill County, containing 384 acres, and underlaid
with one seam of Lykens Valley coal of problematical
value. The land was assessed for taxation purposes, and
the commissioners, acting as a board of revision, aided
by the advice of experts, which was proper (Pardee v.
Schuylkill Co., 276 Pa. 246), fixed a valuation of $99,840,
purporting to represent 60% of the market value, subse-
quently reduced by the court below to 45% thereof, so

as to establish uniformity with the assessments of other coal lands in the community.

A review of the decision of the board was asked, and the case was heard, on appeal, by the common pleas. It was there insisted that the market value of the land in question was not greater than $55,000, and the commonly used percentage of this amount should be the basis of any tax levy. At the hearing, the assessment, as made, was presented, and thus a prima facie case was established. The proceedings before the court on review are de novo (L. & W. Coal Company's Assessment, 225 Pa. 272; Central Penna. Lumber Co.'s App., 232 Pa. 191), and the fairness of the valuation is assumed. In the absence of competent testimony to show its incorrectness, or that the action of the board was arbitrary, and in disregard of the owner's rights, it is conclusive, yet when such evidence is produced, it cannot be overlooked. If the testimony offered is sufficient, and the witnesses giving it are credible, the prima facie case, made out by the production of the assessment rolls, falls, and it becomes the duty of the court to revalue the property according to the market value shown: Kemble's Est., 280 Pa. 441; Shannopin Coal Co. v. Greene County, 280 Pa. 4; Lehigh Valley Coal Co. v. Northumberland County Commissioners, 250 Pa. 515; Kaemmerling's App., 282 Pa. 78.

By the Act of 1841 (May 15, 1841, P. L. 394, section 4), the tax assessors were commanded to fix the worth of all properties "according to the actual value thereof, and at such rates and prices for which the same would separately bona fide sell," and the commissioners, acting as a board of revision, were directed (Act July 27, 1842, P. L. 445, section 13) to inquire if the assessment was "at a sum or price not less than the same would bring after full public notice, at a public sale." "There can be no doubt of the legislative intention which finds expression in the Act of 1842, and the earlier statutes, that actual selling value shall be the standard to de-

termine assessable value": D., L. & W. R. R. Co.'s Assessment (No. 1), 224 Pa. 240, 247. This means the real worth of the land, as limited by the market value or sum which can be obtained at public vendue: Kemble's Est., supra; Washington County v. Marquis, 233 Pa. 552. "By fair market value is meant the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the property is adapted and might in reason be applied": 26 R. C. L. 365. It is the price which the land would bring at a fair sale between parties dealing on equal terms: 37 Cyc. 1011.

Ordinarily, this can be shown by witnesses who have knowledge of the values of property similarly situated and available for like use, and opinions based on sales of such are admissible to establish the worth of the one in question: Marine Coal Co. v. R. R. Co., 246 Pa. 478, 492. Testimony of this character is not limited to experts but may be given by others not so qualified, who are familiar with the land involved and its surroundings: Hoffman v. Coal Mining Co., 265 Pa. 476. Even if but one sale of similarly situated property is known, the witness is not necessarily incompetent to testify (Rea v. Pittsburgh Ry. Co., 229 Pa. 106), and opinions may be received, if based on the general selling price in the community (White v. Western Allegheny R. R. Co., 222 Pa. 534; Curtin v. R. R., 135 Pa. 20; P. R. R. Co. v. Vance, 115 Pa. 325), or on the sums at which like properties are held: Friday v. P. R. R. Co., 204 Pa. 405; Fessler v. S. H. G. & W. Co., 69 Pa. Superior Ct. 331.

"The general rule in Pennsylvania is that market value means the price or value of an article established or shown by sales, public or private, in the way of ordinary business. As applied to the valuation of real estate in a proceeding like the one at bar, if the evidence shows recent bona fide sales of the tracts under consideration, or of tracts similarly situated in the neighborhood and

of like quality, the general selling price thus established would be the market value within the meaning of the law, that is, if all the conditions are the same...... If, however, there have been no recent sales of the lands under consideration, or of other lands of like quality similarly situated, or no general asking or selling price in the neighborhood is shown, an assessor must of necessity use his best judgment in determining what he believes the land would sell for at a bona fide sale after due notice......[In such case] the market value may be established by the testimony of persons acquainted with the property, and whose knowledge and experience qualify them to form an intelligent judgment as to its proper valuation": P. & R. Coal & Iron Co. v. Northumberland County Comrs., 229 Pa. 460, 466, 467. The standard of qualification of witnesses called to establish worth must not be so high as to exclude the only available testimony: White v. Western Allegheny R. R. Co., 222 Pa. 534. It is sufficient if they have such reasonable knowledge of the value of the land as could be expected in view of the circumstances of the particular case: Wissinger v. Valley Smokeless Coal Co., 271 Pa. 566; Lally v. Central Valley R. R. Co., 215 Pa. 436.

The present record has been examined with the controlling principles above set forth in mind. The court below proceeded on the theory, stated both at the trial and in the opinion filed, that actual sales of coal in Schuylkill County were so few in number as to form no basis for an opinion of the market value of the land in dispute, and therefore held the witnesses produced to give estimates as to its worth could not express their opinions. Those called were mining engineers, acquainted with the property, the vein of coal upon it, and the surrounding workings. Such testimony was the best available (P. & R. C. & I. Co. v. Northumberland Co. Comrs., supra, p. 468), and should have been received. Two of the three rejected, Lewis and Auman, knew of the sale of one tract similarly situated, and carrying the

same vein of coal, though located some miles distant, and a third, Dolan, was acquainted with the general selling price of coal lands in this field. All were properly qualified as to experience and knowledge of the property in question, and the refusal to permit them to give their views as to its value was error, which requires a reversal.

The Williamson tract had been upon the market for many years, and several options were given to prospective purchasers at the price of $55,000. On two occasions it had been put up at public sale after due advertisement, with the statement that the land would be transferred to any one bidding this amount. Testimony to prove these facts was rejected by the court below, and complaint is made of these rulings. Ordinarily, offers to buy or sell property are objectionable as evidence of actual worth, since the receipt of such proof would lead to collateral inquiries as to the circumstances under which the tenders were made. Examination as to such facts has been held, however, to be proper to show that a value testified to by a plaintiff is excessive, in an action to recover damages for land taken (Rea v. Pittsburgh R. R. Co., supra, p. 119), and it has been said in a sister state that "the market price of a marketable commodity may be determined as well by offers to sell, made by dealers in the ordinary course of business, as by actual sales; and statements of dealers in answer to inquiries as to price are competent evidence": Harrison v. Glover, 72 N. Y. 451. In the present case, the question to be solved was the determination of the amount which the land would bring at an honest sale. The efforts to dispose of it for $55,000, both privately and publicly, furnished some indication of its market value, upon which the tax assessment must necessarily be based. The holding price of other lands similarly situated may be the basis of an estimate of worth. With like reason that of the property in question should be taken into consideration. The evidence proposed should have been

received and weighed with the other facts in reaching a just conclusion.

The eleventh assignment of error must also be sustained. Experts were called to the aid of the board of revision, and their estimates and calculations, as appears by the answer filed, were used as a basis in determining the valuation. At the hearing before it, the right to inquire as to the methods followed in making up the assessment was denied, on advice of counsel. When the trial was had before the common pleas, one of these experts, Monroe, was called by appellant as a witness, and asked to explain his manner of arriving at the result adopted by the board. Permission to so examine was refused on the ground that it was in effect a cross-examination to "attack his veracity," and would tend to impeach the witness by the party calling him. With this conclusion we cannot agree. It was proper to elicit from the only one who knew, except his associate expert, the considerations which entered into the making up of the estimates. The fact that this might be followed by the testimony of other witnesses, contradicting the statements he might make, or the conclusions drawn therefrom, did not render the examination incompetent. "It is true, as a general rule, a party cannot be permitted to impeach the veracity of his own witness, yet he may disprove the facts to which his witness has testified": P. R. R. Co. v. Fortney, 90 Pa. 323, 328. "The mere fact of calling a witness does not mean that the party thereby admits as true everything the witness may say, and he is not estopped from proving the facts to be otherwise by other evidence": Henry on Trial Evidence, 434. The objection should have been overruled.

The decree is reversed, and the record is remitted that the trial court may grant a further hearing, and determine the case in accordance with this opinion; costs of the appeal to be paid by the appellee.