From William McElwee, Jr., New Castle,. Pa.

---

# Philadelphia & Reading Coal and Iron Company's Appeal.

*Taxation—Coal lands—Rules for assessment—Appeal from assessment—Expert opinion—Market value.*

1. On an appeal from a tax assessment of coal lands, the court will take into consideration the valuations, assessments and market value of other real estate in the county or out of it within a reasonable distance from the lands in question.

2. The value must be fixed by proof offered in each case and at the price the property would bring at a *bona fide* sale after due notice, and is to be determined by what the competent, credible and controlling evidence in the case proves.

3. Sales of other comparable coal lands in the vicinity are to be considered, and the more recent such sales are, the more persuasive the evidence.

4. Where experts differ in their opinions as to the value of coal lands, the court should follow the opinions of those who take into consideration all of the elements which go to make market value of coal lands and whose reasons for their conclusions seem most reasonable.

5. A mining engineer is competent to express an opinion as to the value of coal lands where his conclusions are based on the evidence of other experts heard by him in court, although he himself has made no examination of the lands in question.

6. Where the location, quality of coal and mining conditions are the same on two tracts of coal land, the approximate quantity of coal remaining upon each is an important element in determining relative values and should be considered in the opinion as to value.

7. In fixing the valuation upon each of several tracts of coal land, the court will take into consideration as one of the elements of value that the tracts are contiguous and whether they can be readily, or at all, mined from collieries owned by the same parties situate on adjoining tracts in other counties.

8. Established market value is the amount of money which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all the uses to which the property is adapted and might in reason be applied.

Appeal from the action of the board of revision. C. P. Columbia Co., Sept. T., 1922, No. 303.

*Hemingway & Whalen,* for appellant.

*H. Montgomery Smith, E. J. Mullen* and *George W. Moon,* for appellees.

POTTER, P. J,. 17th judicial district, specially presiding, Sept. 12, 1925.—This is an appeal by the Philadelphia & Reading Coal and Iron Company from

Philadelphia & Reading Coal and Iron Company's Appeal.

the valuation of its lands in Columbia County for the purposes of taxation, as placed thereon by the county commissioners of that county, for the year 1922, while sitting as a board of revision, and this appeal brings the proceedings into court *de novo:* L. & W. Coal Co.'s Assessment, 225 Pa. 272; Central Penna. Lumber Co.'s Appeal, 232 Pa. 191; Penna. Co. for Ins. on Lives and Granting Annuities' Appeal, 282 Pa. 69.

The controversy before us involves four tracts of coal land located in Conyngham Township, Columbia County; the following being the names and acreage of them, with the valuation placed on each by the assessor of that township upon making the triennial assessment for the year 1922, to wit:

| | |
|---|---|
| Locust Mountain Tract (coal), 25 acres, at $100 per acre.... | $2500 |
| Locust Mountain Tract (barren), 121 acres, at $5 per acre.. | 605 |
| Ashland Estate (coal), 145 acres, at $800 per acre.......... | 116,000 |
| Locustdale Tract (coal), 259 acres, at $800 per acre......... | 207,200 |
| Gap Tract (coal), 7 acres, at $800 per acre................. | 5600 |

Or a total assessment of............................ $331,905

After this assessment was returned to the county commissioners' office, they secured the services of a mining engineer to assist them in placing a correct valuation upon these lands, which they had a legal right to do (Appeal of Penna. Co. for Ins. on Lives and Granting Annuities, 283 Pa. 69; Kemble's Estate, 280 Pa. 441), by name, William F. Sekol, of Scranton, Penna., with whom they entered into an agreement whereby he was to be paid a certain *per diem* sum for his services, in addition to which he was to be paid a certain percentage on the increase of the assessments over what they had been. As to this agreement, we have no hesitation in saying that it is void *ab initio* as being against public policy. The *per diem* compensation therein provided for may be fit and proper, but the additional sum as payment, based on the increase of the assessments, would seem to be an incentive for the increase of the valuations by the engineer. However, this question is not now before us, but, in passing, we could not refrain from these remarks relative to this contract.

The appellant, by counsel as well as by other competent representation, appeared several times before this board of revision and presented testimony with a view of attempting to show what, in its estimation, was the proper valuation to be placed upon its coal lands in question. At the conclusion of these hearings, this board of revision fixed the valuation of these respective tracts as follows:

| | |
|---|---|
| Locust Mountain Tract (coal), 25 acres, $1050 per acre..... | $26,250 |
| Locust Mountain Tract (barren), 121 acres, at $5 per acre.. | 605 |
| Ashland Estate (coal), 145 acres, at $5548 per acre........ | 804,502 |
| Locustdale Tract (coal), 259 acres, at $11,681 per acre..... | 3,025,830 |
| Gap Tract (coal), 7 acres, at $14,010 per acre............. | 98,070 |

Or a total assessment of.........................$3,955,257

It is especially to be noted that the assessed valuation of these four tracts has been increased a trifle over eleven times as much as the amount placed upon them by the assessor, as a total, for doing which we have no reason whatever given. This is quite a marked increase, almost surprisingly so, the reason for which, we think, should be given. Three or four days were spent in hearing this appeal, during which time 324 typewritten pages

of testimony were taken, in none of which have we been able to find one word of explanation as to why this marked increase was made, except that Sekol had placed these estimates on these respective tracts.

It is quite apparent that these valuations cannot stand. The value must be fixed by proof offered in each case and at the price the property would bring at a *bona fide* sale after due notice, and is to be determined by what the competent, credible and controlling evidence in the case proves: Lehigh Valley Coal Co. *v.* Luzerne County, 255 Pa. 17, 22. Measured by this standard, in the face of the proof submitted in this case, we must discard this high valuation and revalue these tracts according to the market value established (Kemble's Appeal, 280 Pa. 441), by which is meant the amount of money which a purchaser, willing but not obliged to buy, would pay to an owner, willing but not obliged to sell the land, taking into consideration all the uses to which the property is adapted and might in reason be applied: Penna. Co. for Ins. on Lives and Granting Annuities' Appeal, 282 Pa. 69.

The valuation that should have been placed upon the lands by the assessor should have been according to the actual value thereof, and at such rates and prices for which the same would separately *bona fide* sell (Act of May 15, 1841, P. L. 393), and the county commissioners, acting as a board of revision, should have inquired if the assessment was at a sum or price not less than the same would bring after full public notice at a public sale: Act of July 27, 1842, P. L. 436.

In view of the testimony taken in this appeal, including the opinions of witnesses heard, nearly all of whom were experienced mining engineers, we must conclude that the valuation as placed on these several tracts by the board of revision was not in accord with the law as hereinbefore expressed.

We have hereto appended three statements, which are self-explanatory, showing the different valuations placed on each of these tracts by the assessor of Conyngham Township, by the board of revision and by the witnesses called by the appellant and by the appellees. It is to be noted that all the valuations by witnesses are far below those of the board of revision, so its valuations fall, as we have hereinbefore intimated. It then becomes our duty to revalue this property from the competent evidence presented to us by both parties.

In doing so, we are bearing in mind the approximate amount of coal in place (not, however, as to tonnage), location, improvements, quality, conditions and environment, accessibility to markets, transportation facilities, probable cost of operating, as well as any other important factors tending to show us the market value. The witnesses called, judging from their testimony, apparently had these principles in mind when they gave their opinions as to values, as well as knowledge of sales and prices of other coal tracts within a reasonable distance of the lands in question. Nearly all of them are expert mining engineers of many years' experience, the testimony of whom, we think, furnishes us with the best kind of evidence to assist us in fixing these valuations. We think they all properly qualified themselves to express their respective opinions.

There was some question in the mind of the presiding judge as to receiving the testimony of John D. Jones, a mining engineer called by the appellees, as to valuation of these tracts. He had not been in the mines and had not made any special examination of them nor the coal in them, of the veins or their thickness or their number. However, he was in court and heard the other witnesses testify. He said he was basing his testimony as to value upon the testimony of H. S. Smith, the other witness called for the appellees. Therefore, we think, he is properly qualified as an expert to place values.

In the case of Mish v. Wood, 34 Pa. 451, after evidence had been given of the contents and value of certain trunks, the testimony of experts was received to prove the value of similar articles to those described, although the particular goods had never been seen by the experts called. The same principle is affirmed in the case of Uhr v. Davidyan, 76 Pa. Superior Ct. 548.

Under the authority of these two cases, we think the opinion of Mr. Jones is entitled to consideration by this court in fixing the values on these four tracts of coal land.

This, then, brings us up to the point of fixing the valuation of these four tracts of land according to the weight of the proof offered, which is more a question of fact than of law.

We think the evidence here fully warrants us in placing the following values for assessment purposes upon the four tracts in question, to wit:

| | |
|---|---:|
| Locust Mountain Tract, 25 acres, at $150 per acre | $3,750 |
| Ashland Estate, 145 acres, at $820 per acre | 118,900 |
| Locustdale Tract, 259 acres, at $1235 per acre | 319,865 |
| Gap Tract, 7 acres, at $1400 per acre | 9,800 |
| Or a total assessment of | $452,315 |

We are not placing any valuation upon the 121 acres of barren land in the Locust Mountain Tract, as there appears to be no dispute about this item.

The Gap Tract of seven acres is virgin coal, although small it be. The appellee contends that this tract can be operated from an adjoining colliery located in an adjoining county and owned by the appellant. If this be true, then we are too low in the valuation we have placed upon it. This allegation is denied by the appellant, by saying that there is a fault or dip or a marked change in the strata underlying this tract which makes its operation from the adjoining colliery an impossibility, and that because of this fault it has not been mined before this. That, in order to mine this tract, it will be necessary to sink a shaft on it and erect a breaker and all the necessary equipment. If this view is correct, which is supported by the testimony of competent mining engineers, then we think we are not too low in our valuation, taking into consideration the initial cost of opening the mine. It is not possible for us to say whether or not this fault exists, but we think we are justified in accepting the testimony of mining engineers relative to it who are familiar with the strata in that locality.

From the testimony submitted we are led to the following

### Finding of facts.

1. That the lands involved herein are located in the southeastern part of Columbia County, adjoining the Counties of Northumberland and Schuylkill, in the middle western anthracite coal fields.

2. That the four tracts of land involved in this appeal have been separately assessed by the assessor of Conyngham Township and have been separately revised by the board of revision, but, by the consent of the parties hereto, have been embraced in this one appeal.

3. That the surface of each of these four tracts is of nominal value only, exclusive of the coal in place thereunder.

4. That the breakers and other improvements owned by the appellant, used in the operation of the mines on the lands in dispute, are located on other adjoining land of the appellant not embraced in this appeal.

5. That the coal in place on each of these four tracts is substantially of the same quality as that on adjoining tracts not embraced in this appeal.

6. That there have been no sales of coal lands in recent years in Columbia County, but that there have been comparable sales of coal lands in adjoining counties within from ten or less to twenty miles of the lands in question, having substantially the same general geological formation.

7. That there is a variance in the coal lands of Columbia, Schuylkill and Northumberland Counties as to the number of veins, their area, thickness, pitch and fault areas, and on developed property as to the extent of mining and exhausted areas.

8. That the market value of coal land in Schuylkill and Northumberland Counties, as shown by the evidence in this case, has not been fixed or settled per acre for some years back.

9. That at the time of the assessment of the lands in suit, there was no general asking or selling price per superficial acre of coal lands in the Counties of Columbia, Schuylkill and Northumberland.

10. We have competent testimony, however, showing the market value of the lands in dispute, based upon sales of, and prices paid for, similar lands in this locality, estimates being made upon the approximate quantity of coal, but not based upon tonnage.

11. That the witnesses of the appellant, with one exception, were in the employ of the appellant.

12. That all the witnesses called by both parties are properly and well qualified to express an opinion as to the market value of the lands in dispute, each of whom is entitled to credence.

13. That we deem it established by competent evidence that in the year 1922 the fair market values of each of the tracts involved herein are as we have hereinbefore stated and fixed them.

## Conclusions of law.

1. That it is the duty of the Court of Common Pleas to hear this appeal and the proofs offered and to make such order and decree as to the judges may seem just and equitable, having due regard to the valuations, assessments and market value of other real estate in the county or out of it within a reasonable distance from the lands in dispute, and that the valuation so placed upon each tract be at its market value.

2. That market value of coal lands is best determined by opinions of competent witnesses, based upon sales of other comparable coal lands in the vicinity. The more recent such sales are, the more persuasive the evidence.

3. That where experts differ in their opinions as to value of coal lands, the court should follow the opinions of those experts who take into consideration all of the elements which go to make market value of coal lands and whose reasons for their conclusions seem most reasonable.

4. Location, quality of coal and mining conditions being the same on two tracts of coal land, the approximate quantity of coal remaining upon each is an important element in determining relative values and should be considered in the opinion as to value.

5. In fixing the valuation upon each of these four tracts, we are taking into consideration as one of the elements of value that these tracts are contiguous, three of them parts of going mining operations, and whether they can be readily, or at all, mined from collieries of the appellant situate on adjoining tracts in other counties.

6. That we consider the testimony of John D. Jones competent as an expert, and are permitting it to stand in this case.

*Philadelphia & Reading Coal and Iron Company's Appeal.*

And now, to wit, Sept. 12, 1925, the appeal is sustained and the valuations, as placed upon the four tracts of coal land herein involved, are reduced and are valued for the purposes of taxation at their respective market values, as follows:

| | |
|---|---:|
| Locust Mountain Tract, 25 acres, at $150 per acre | $3,750 |
| Ashland Estate, 145 acres, at $820 per acre | 118,900 |
| Locustdale Tract, 259 acres, at $1235 per acre | 319,865 |
| Gap Tract, 7 acres, at $1400 per acre | 9,800 |
| Total | $452,315 |

And now, to wit, Sept. 12, 1925, an exception is noted respectively for the appellees and for the appellant, and bills are sealed.

From R. S. Hemingway, Bloomsburg, Pa.