## Canopus Coal Company's Appeal.

Submitted November 27, 1935.  Before FRAZER, C. J., KEPHART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*J. L. Pipa, Jr.,* and *J. A. Welsh,* for appellant.

*Fred B. Moser* and *H. F. Bonno,* Solicitor for Northumberland County, for appellee.

OPINION BY MR. JUSTICE BARNES, June 26, 1936:

The Canopus Coal Company owns two tracts of land, totaling four hundred and forty-six acres, in the central part of Coal Township, Northumberland County.  These are commonly known as the "Robert Gray Tract No. 1"

and the "John Brady Tract No. 2." From the assessments placed on these lands at the triennial assessment of 1931, the company appealed to the county commissioners sitting as a board of revision. The assessments were adjusted by the board and from the revision so made an appeal was taken to the court of common pleas. After hearings in the court below further reduction was made in the assessments. Contending that the assessments are still excessive and confiscatory, the company then took this appeal.

In our opinion filed to-day and indexed to Nos. 120 to 130, inclusive, January Term, 1935, relating to the assessments upon the lands of the Philadelphia and Reading Coal and Iron Company, and its subsidiaries in Northumberland County, we had to deal there with the factors to be taken into consideration in the valuation of anthracite coal lands for tax purposes. The basic principle is that such lands, as well as property of every description, must be assessed in accordance with market value. This standard of valuation the legislature has prescribed for the making of assessments "in language which every citizen can understand."[1] We defined the meaning of "market value" in *Lehigh & Wilkes-Barre Coal Co.'s Assessment,* 298 Pa. 294, 300, and in *Appeal of Pennsylvania Co.,* 282 Pa. 69, 74. The same rules govern us in our determination of the questions raised by this appeal. And here, as in those appeals, when we refer to "assessments" we have in mind the market value of the two tracts involved as affected by their particular conditions, and applying in their valuation the ratio extant in the county for the appraisement of all real estate.[2]

Referring now to these tracts, it is conceded by the parties that for a number of years no mining has been

---

[1] See sections 402 and 505 of the *General County Assessment Law of May 22, 1933, P. L. 853.*

[2] In Northumberland County, assessments are based upon fifty per cent of the market value of real estate.

done, as the mine formerly operated thereon has been closed since 1926. The workings have been permitted to fill with water. The breaker was destroyed by fire in 1931. It was testified that to put the property into production would require the construction of a new shaft and a new breaker, costing at least half a million dollars. In its present state, this property is really held in reserve; its value is a potential one to be utilized at some future date, and therefore, is lower than that of similar lands now being actively operated.

The appellant purchased the tracts in 1926. It contends that this is an unworkable and abandoned property, and has no value because of careless operation prior to the time when appellant acquired ownership thereof. In support of its position it is asserted that the upper veins of coal have been mined in such a manner that no further coal can be extracted therefrom with safety. To the contrary there is evidence that the two most important veins in this territory (No. 8 and No. 9) have not yet been mined on one of the tracts, and that on the other one they have been developed, but are not yet near exhaustion. In these veins, and the ones below them, it appears that mining may be carried on free from the dangers which exist in the upper veins as a result of improper mining practices by former operators of the land.

These tracts were sold together at public sale in 1922 at a price of $237,500. In 1926 the property was again sold at public sale by the receiver of the company operating it. This time the price was $310,000 and the appellant company was the purchaser. Since that time the colliery has not been actively operated. The electrical equipment has been removed from the mine and the pumps have been sold. The breaker, as we have said, was destroyed in 1931.

At the 1931 assessment, the two tracts were valued at $350,000 and the breaker at $18,000 more. The board of revision reduced the assessments on the coal lands to $220,000 and removed entirely the assessment on the

212

breaker. The court below made a further reduction, and fixed the assessments at $142,700. At this figure the John Brady tract was assessed at $400 per acre, and the Robert Gray tract at $250 per acre. These assessments compare favorably with those applied to tracts of like character and condition, the assessment of which was before us in Nos. 120 to 130, January Term, 1935. We have carefully examined the evidence and we think it sustains the findings of the court below. The assessments are not excessive.

The decree of the court below is affirmed, costs to be paid by appellant.