## In re McDevitt

*F. F. Truscott*, for Thomas R. C. McDevitt.

*O. Kraus, Jr*, and *J. F. Nusbaum*, for Richard J. Mc-Devitt.

BOK, P. J., December 21, 1948.—The parties in interest are the surviving partner in a business and the executor of the other, now deceased, partner.

An agreement between these partners, who were brothers, provides, in paragraph 15, that if either should die, the survivor may continue the business, and that arbitration should be had as to the valuation of

decedent's interest if no agreement could be reached on that point.

The question of value went to arbitration, and the arbitrators fixed the value of decedent's share at $150,-311.74.

Decedent's executor then filed a rule to show cause why the award should not be modified and corrected, under sections 10 and 11 of the Arbitration Act of April 25, 1927, P. L. 381, 5 PS §§ 170 and 171. These sections provide for judicial review when, under the only part of them that we consider apposite, the arbitrators "were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy". The alleged misconduct—and none is charged except in the sense that the arbitrators misapprehended the law—appears in paragraphs 4 and 6 of the award, as follows:

"4. That a cash offer was made on January 7, 1948, on behalf of Raymond C. McDevitt personally and individually to the Richard J. McDevitt in the sum of Two Hundred and Fifteen Thousand Dollars ($215,-000.00) for his, Richard J. McDevitt's share in the said partnership, which offer was refused by Richard J. McDevitt on February 13, 1948."

"6. That the Board in arriving at the value of the assets believes that it was not bound as to the value by the offer made by Raymond C. McDevitt and therefore did not take said offer into consideration in arriving at the net value of the assets as aforesaid but made a determination based on all the evidence in the record."

It is asserted that the arbitrators should have taken this offer into consideration.

Counsel have filed a vast number of briefs, supplemental briefs, replies, and comments on some of them. They have testified generously in these briefs and have gone far beyond the charter of the instant proceeding, which consists only of the petition for the rule, and the

answer. We are told that 717 pages of testimony were taken before the arbitrators, but this testimony is not part of our record, and the pleadings raised only one question, the legal one of whether or not the arbitrators should have considered the offer of $215,000. We will confine ourselves to this question alone.

Petitioner urges us to decide also when the award should be paid and to order payment accordingly. We regard this as none of our business at present, for it was obviously not submitted to the arbitrators, and their award contains no mention of it. Nor does petitioner allege that it was error on the arbitrators' part not to consider it. A glance at the partnership agreement will reveal that this question cannot arise until the question of value is out of the way, and for us to decide it now would be premature and in the nature of a declaratory judgment.

In our opinion, the arbitrators were not bound by the $215,000 cash offer in reaching their valuation, but they were bound to consider it.

Both parties have cited an enormous number of cases pro and con the admissibility in evidence of an offer to buy, but the cases have to do with establishing market value in land damage and tax assessment suits, and the like.

We are not concerned with market value here, but with the value of a going business for the purpose of fixing the share of a deceased partner. The elements are very different, for this business contains such factors as good will, transportation franchises, inventory, and so on. Real estate has a market value because it is sold so frequently that the multiplicity of transactions creates a norm by which value can be measured in terms of completed sales. Sales provide the basis for such a norm, and mere offers to sell could so distort it, when made for ulterior or casual reasons, that they cannot safely be relied on.

The question is really one of what is the best evidence. This is the clear meaning underlying the line of cases cited by the parties, and they can be used to that extent. Sales are considered the readiest and most accurate test of market value, but where there are no sales, "the best evidence available must govern": Kemble's Estate, 280 Pa. 441 (1924) ; White v. West Allegheny Railroad Co., 222 Pa. 534 (1909).

Thus, it has been held that where there are no sales, evidence of other uses to which the property might be put is admissible: Edmonds' Appeal, 314 Pa. 382 (1934). This rule is particularly applicable in cases relating to the assessment of coal lands, where sales are infrequent and mining problems are intricate. See Lehigh Navigation Coal Co.'s Appeal, 327 Pa. 327 (1937). In Philadelphia and Reading Coal and Iron Co. v. Northumberland County Commissioners, 229 Pa. 460 (1911), the court referred to the absence of sales *or of general asking and selling prices* in the neighborhood. In Glen Alden Coal Co. v. Commissioners, 345 Pa. 159 (1942), the court said that it would reverse or modify "if the court below fails to give any weight or due weight to a practical consideration relevant to the issue trying".

Our Supreme Court has also allowed evidence of prices for which property is held for sale. The clearest example is in American Academy of Music Appeal, 321 Pa. 433 (1936), in which the court said: (p. 434)

"It is true that such factors as a bona fide offer to sell the property, the value of which is in dispute, and a general recession in the value of realty in its particular location, must be taken into consideration by the lower court in determining the fair market value of the property for the purposes of assessment. But it does not follow that these are the sole factors, as the appellant contends, nor controlling upon the court in its determination of the fair market value."

See also Fessler v. Schuylkill Haven Gas & Water Co., 69 Pa. Superior Ct. 331 (1918) ; Friday v. Penna. Railroad Co., 204 Pa. 405 (1903) ; Pennsylvania Company Appeal, 282 Pa. 69 (1925).

In Commonwealth v. Fall Brook Railway Co., 188 Pa. 199 (1898), it was necessary to ascertain the value of the company's capital stock. There had been no sales, and the court allowed documentary and oral evidence of the franchises, privileges, and assets of the company.

An offer to buy may not be the best evidence where there is evidence of actual sales, but this does not mean that such an offer cannot, as a matter of law, be the best evidence or some evidence where there are no sales.

In the instant case we are not dealing with a situation requiring the ascertainment of "market value" as such. Some of the elements of the business, such as its land and trucks, may be best valued by the yardstick of the market, but the value of the business as a whole, and of a deceased partner's share, is something apart from pure market value. Going businesses do not sell in the same way that land and trucks do, and this business, which represents the lifelong career of two brothers, contains elements of family concern and succession that have no place between parties dealing at arm's length in the open market. No doubt the value desired is "actual value", which allows such considerations to enter, rather than "actual value as reflected in terms of market value": North American Telegraph Co. v. Northern Pacific Railway Co., 254 Fed. 417; Walter v. Duffy, 287 Fed. 41.

We do not wish to be understood as holding that the executor's offer of $215,000 is the best evidence of the actual value of this business. We hold only that it should be considered as one factor among many. It was found by the arbitrators to be a "cash offer" that was made and refused, and we must ignore counsel's opposing testimony in their briefs as to how and when and

why the offer was made. The arbitrators are the final judges of the facts and their finding must govern: P. O. S. A. Hall Association v. Hartford Fire Insurance Co., 305 Pa. 107 (1931) ; Pierce Steel Pile Corp. v. Flannery, 319 Pa. 332 (1935).

Since the Arbitration Act of 1927 puts an arbitration award on the same footing as the verdict of a jury, it can be reviewed judicially: Navarro v. Pittsburgh School District, 344 Pa. 429 (1942). The exact provision of the act under which this rule was taken is section 10, which says that the court shall vacate an award when the arbitrators refuse "to hear evidence pertinent and material to the controversy". While the arbitrators did not refuse to hear evidence of the $215,000 offer, they expressly said that they "did not take (it) into consideration", which we consider the same thing as refusing to hear it. It raises just as squarely the legal question of their duty to give the evidence consideration.

Finally, in the legal discussion, we regard the proceedings before the arbitrators as a dispute and not merely as a reference to appraisers for an assessment of worth. The partnership agreement provides that arbitration shall be had "should the survivor and the representative of the deceased partner's estate be unable to agree upon a valuation of the interest of the decedent in the partnership". See Grote v. Stein et ux., 99 Pa. Superior Ct. 556 (1930). The parties could not agree, and the 717 pages of testimony taken before the arbitrators is indication of a vigorous disagreement.

We must vacate the award and direct a rehearing by the arbitrators on the one point involved in this discussion.

We express no opinion on the effect the offer should have. The arbitrators may alter their award after considering it or they may not. If it be true that the surviving partner offered to pay $110,000 to his brother's

estate, then the arbitrators' value of $150,311.74 is relatively midway between that offer and the executor's offer of $215,000, and may be at a fair level of value. It is quite obvious that both parties want the business more than they want the money, a fact that might rob either offer of any substantial weight, or might add some, since they come from the parties most closely concerned in this essentially family business. Since we cannot be the triers of the facts and since the arbitrators are, the authorities convince us that we cannot say as a matter of law that the $215,000 offer is not a factor to be considered. We are clear that it should be considered in arriving at a whole valuation.

The rehearing about to be ordered should not open up the case generally but should be confined to the one point presented to us as error, the offer of $215,000 by the executor of deceased partner.

### Order

And now, December 21, 1948, the award of the arbitrators is vacated and a rehearing by the arbitrators is ordered in accordance with this opinion.