Opinion by
 

 Hirt, J.,
 

 The appeal to No. 120 October Term, 1941, was taken by the City of Allentown from the valuation of appellee’s land for tax purposes as determined by the lower court. The premises at No. 520 Hamilton Street in Allentown was assessed, for the triennium beginning with 1940, at $60,000; it was reduced by the Board of Tax Revision and Appeals to $58,000. On appeal, the common pleas found that $52,500 was the actual value of the land and on a further finding from the evidence that the assessed values of other properties was less than 80% of the prices for which they were actually sold during the period reasonably near the date of assessment, fixed the valuation in this ease at $42,000.
 

 The duty of the assessor is prescribed by the Act of May 25, 1939, P. L. 225, §1, 53 PS §12198 amending §2504 of the prior act. He is required to value the land “at the actual value thereof.” As to lands where sales prices have been established, the act provides: “In arriving at such value the price for which any property would separately bona fide sell, or the price at which any property may bona fide actually have been sold, shall be considered, but shall not be controlling. Instead, such selling price, estimated or actual, shall be subject to revision by increase or decrease to accomplish equalization with other similar property within the taxing district.” Sale price, while always considered an important element of market value, has never been held controlling in determining values for assessment purposes in construing other acts of assembly
 
 (Hickey’s Appeal,
 
 326 Pa. 467, 192 A. 923) and the above act, therefore, merely codifies a rule laid down by the courts, and, in' this respect, provides no new basis for assessment. Sue
 
 rmann et al. v. Hadley, Treas.,
 
 327 Pa. 190, 205, 193 A. 645.
 

 There is a presumption that the assessor in this case performed his duty and that he in compliance with the
 
 *388
 
 law, assessed the land at its full “actual value.” But that presumption does not prevent a property owner from reducing his assessment, on evidence sufficient to show that assessments generally throughout the district were made at a percentage of actual value, even though such method is a departure from the requirements of the statute. Between the standard of true value and the uniformity required by law, the latter requirement is to be given effect “as the just and ultimate purpose of the law.”
 
 Cumberland Coal Co. v. Board of Revision, Etc.,
 
 284 U. S. 23. In the present act, the emphasis is upon equalization of assessments to conform with our State Constitution, Art. IX, §1.
 

 The contention of the property owner in the court below was twofold; that the assessment exceeded actual value, and that assessments generally throughout the city were computed on the basis of a ratio to actual values. As to the latter aspect, there is no direct evidence that the assessors used a percentage of actual values as a basis for assessments and since the city denies that they did, thei*e was a heavy burden, because of the difficulty of proof, on the property owner to rebut the presumption that the property was assessed at full actual value. If the testimony is insufficient to establish that a ratio of assessed value to actual value was applied generally throughout the district, actual value is conclusive.
 
 Penna. Co. for Ins. on L. & G. Annuities, Appeal,
 
 282 Pa. 69, 127 A. 441.
 

 The hearing before the lower court was de novo. Appeals to this court are regulated by the Act of May 22, 1933, P. L. 853. Section 519 (substantially a re-script of the Act of June 26, 1901, P. L. 601, repealed) provides for appeals by owners; §520 gives the same right to the taxing municipality. 72 PS §5020. Under the Act of 1901 the appellate courts were not limited to an inspection of the record, as on certiorari, but were required to review the judicial action of the court below
 
 *389
 
 on the evidence disclosed by the record.
 
 Rockhill I. & C. Co., Appellant v. Fulton County,
 
 204 Pa. 44, 53 A. 530. Our duties under the Act of 1933 are the same. In this appeal, therefore, the weight of the evidence is before this court.
 
 Lehigh & Wilkes-Barre C. Co.’s Assessment,
 
 298 Pa. 294, 148 A. 301.
 

 The land in question is well located in the heart of the business section of the city. The buildings were originally designed for use as a furniture store. One brick building five stories high oh Hamilton Street is connected with a three story building fronting on Mhple Street. The former is 40 years old; the latter was built in 1916. The entire property is used by the owner in the conduct of an automatic heating and electrical appliance business. The ground floors and the basements are show rooms; the upper floors are used for storage. Appellee does not have use for all of the upper floors and the design of the buildings prevents a leasing of space to others. The cost of remodeling the upper floors to make them attractive to tenants would not be justified by the probable return in rentals.
 

 In assuming the burden upon him, the owner, at the hearing in the court below, was permitted to prove the amounts realized on sales of other real estate throughout the City of Allentown in comparison with their assessed values. Schedules of these properties were received in evidence, showing the amount of the assessment and the sale price in each instance. We have made some attempt to analyze the evidence contained in these exhibits.
 
 [1]
 
 From the exhibits the lower court
 
 *390
 
 found: “Of said properties, one was assessed at less than 10% of its sale price, 11% of them at 100% or more of their sale price and about one-third at more than 80% of their sales prices.” In addition to the exhibits there is testimony of a sale of a store and office building on
 
 *391
 
 Hamilton Street between Seventh and Eighth Streets, to the Woolworth Company for $340,000, assessed at $171*000; a sale of property at 708 Hamilton Street for $85,000, assessed at $38,500; a sale at 714 Hamilton Street for $75,000, assessed at $39,000 and a sale of property at 1332 Hamilton Street for $12,500, assessed at $7,700.
 

 We think it clear that the evidence of sale prices of other properties in the City of Allentown, alone, does not throw light upon the actual value of the property in question and is wholly insufficient to establish that a norm of 80% of actual value was applied for assessment purposes. The sales enumerated are for the most part moderate priced residence properties; only 4 of the 207 are adapted to other uses. A determining factor in arriving at assessment values under the prior act relating to Third Class Cities (Act of June 23, 1931, P. L. 932, §2504) was fair public sale value,
 
 (Erie City’s Appeal,
 
 320 Pa. 31, 181 A. 446) and in practice was usually established by opinion evidence, for actual public sales of real estate are few. The decisions of our courts, generally, have long recognized that sale prices alone cannot govern assessment values if the constitutional requirement of uniformity is to be attained, and with good reason. What one pays for property is not conclusive of what it is worth. Other elements have a bearing upon actual value. Because of unusually favorable location of a property, the price which a none-too-willing-seller exacts, may not be considered prohibitive by a merchant who can use the property profitably. It is possible that the sale of the property, assessed at $171, 000, to F. W. Woolworth Company for $340,000 could
 
 *392
 
 be explained on that ground. There is no evidence on the subject nor as to the circumstances attending any of the sales. The sales of residence properties shown by the exhibits, are generally above assessment, valuations. But without further proof it does not follow that, therefore, a mercantile property, of an entirely different class, in the heart of the business section, is overvalued. Exhibit “H” enumerates sales in an outlying section of the city. They were new houses, built to sell, perhaps embodying features and appliances which made them attractive at prices somewhat above actual values, yielding a profit to the builder. It is possible, also, from the fact that the building and loan companies are still solvent, that the properties which they sold were well selected in the first instance as security for loans, with an eye to saleability. Favorable terms on sale, also, may have had a bearing on sale prices. However that may be, the legislature, wisely we think, has seen fit to subordinate sales prices to uniformity of assessment in cities of the third class to conform with general standards of assessment values and therefore other factors must be considered. “The principle of uniformity is the guide post pointing the way for the local assessor ......and for the courts in making such orders and decrees as may seem equitable and just on appeal”:
 
 Lehigh & Wilkes-Barre Coal Co. v. Luzerne County,
 
 225 Pa. 267, 71 A. 67. Absolute equality is impossible of attainment; approximate uniformity is all that can reasonably be expected.
 
 Dela. L. & W. R. R. Co.’s Tax Assmt. (No. 1),
 
 224 Pa. 240, 73 A. 429.
 

 The exhibits, as an offer of proof of uniformity of assessment defeat themselves. There is no uniformity. The ratio of assessed value to sales price varies in each instance and a selected list of 70 properties from the 207 in the exhibits shows the average assessment to be 96.4% (appellant’s exhibit 1) of the sale price, thus
 
 *393
 
 demonstrating clearly that all properties in Allentown were not under assessed.
 

 We are not prepared to say that undervaluation or even the use of a uniform ratio cannot be established by full testimony of the actual value of 207 representative properties of a total of 32,000 units of real estate in Allentown. To require a property owner on appeal to revalue every other property in the district would be so burdensome and expensive as to amount to a denial of justice:
 
 Harleigh Realty Co.’s Case,
 
 299 Pa. 385, 390, 149 A. 653. What we are bound to say is that the evidence in this case is insufficient for the purpose. The significance of the failure to disclose the circumstances attending each sale in the exhibits is indicated by reference to two properties. The fact that the assessment of one was but 10% of the sale price impressed the lower court; at- the argument it was admitted that the assessment was on a vacant lot; a house built on the lot thereafter, accounts for the variance. The importance of disclosing all material facts, where the argument is based upon comparisons, is also illustrated by the assessment of 620-24 Maple Street. It is conceded that further evidence would have shown that there was a building on the land when the purchaser paid $19,000 for it; the building had been removed before the assessment and $3,500 represents assessed land value only. The evidence of a few sales in the neighborhood of the property in question does not affect the assessment, especially in the absence of testimony, of material circumstances having a bearing upon comparative values e.g., the relationship of parties, whether the purchasers were willing but not obliged to buy and the sellers willing but not forced to sell; the elements of similarity in location, construction, and the uses to which the property may be put, and the like. Argument by analogy has little force unless the things compared have identical elements in common.
 

 
 *394
 
 The effect of the conclusion of the lower court, in this case, is not that the land was assessed too high but that other lands of various character and uses throughout the City of Allentown, judged by the values established by sales prices alone, have been assessed too low. This is not ground for a revaluation of the property for tax purposes.
 
 Mineral R. & M. Co. v. County Com’rs,
 
 241 Pa. 339, 88 A. 496.
 

 Though we cannot find justification for an assessment on the basis of 80% of actual value, there is sufficient competent evidence in the testimony of experts to support the finding of the lower court that the actual value of the property was $52,500. The assessment in this appeal will be fixed at that amount.
 

 The order is modified and the assessment established by the board, on revision, is reduced to $52,500.
 

 By agreement, the testimony in the foregoing case is made a part of the record in each of the following appeals, consolidated with the above appeal for disposition in this opinion. For the reasons stated, we find the evidence insufficient to rebut the presumption that full actual value was the standard of assessment in all of these appeals.
 

 APPEAL, NO. 121, OCTOBER TERM, 1941
 

 This is an appeal by the city from the valuation for assessment purposes as determined by the lower court, of property on Hamilton Street in the City of Allentown between Fourteenth and Franklin Streets, a six-story apartment house. The property was assessed at $160,000. The lower court upon sufficient competent evidence found that the actual value of the. property exceeded the amount at which it was assessed. The city's interest in this appeal, however, is to sustain the assessment, not to increase it.
 

 The order of the lower court fixing the amount of the assessment at a percentage of actual value is reversed and the assessment at $160,000 is reinstated.
 

 
 *395
 
 APPEAL, NO. 140, OCTOBER TERM, 1941
 

 This is an appeal by the city from the valuation for assessment purposes of the premises at 701-703 Hamilton Street in the City of Allentown. The buildings were dilapidated and obsolete and the real estate had land value only. It is well located. The property was assessed at $198,800 for the triennium. An appeal to the Board of Revision of Taxes and Appeals was dismissed. On appeal to the common pleas, the court, upon sufficient evidence, found that the actual value exceeded the amount of the assessment for tax purposes. In this appeal, also, the interest of the city is merely to sustain the assessment.
 

 The order of the lower court fixing the amount of the assessment at a percentage of actual value is reversed and the assessment at $198,800 is reinstated.
 

 APPEAL, NO. 141 OCTOBER TERM, 1941
 

 The appellees are the owners of taxable real estate at the northwest corner of Hamilton and Fourteenth Streets in the City of Allentown. The property was assessed at $36,000 for the triennium. An appeal to the Board of Revision of Taxes and Appeals was dismissed. The court upon testimony of experts as to actual value ranging from $18,000 to $20,300 determined that the actual value of the property was $20,000 at the time of the assessment. The building on the premises was an old dwelling house of bad design and in a state of disrepair contributing little, if any, to land value. The city offered no testimony rebutting the evidence as to value and the court’s estimate, supported by sufficient competent evidence, must be accepted as the value of the real estate for assessment purposes.
 

 The order determining the amount of the assessment at a percentage of actual value is modified and the assessment for tax purposes is fixed at $20,000.
 

 APPEAL, NO. 284 OCTOBER TERM, 1941
 

 This is an appeal by the city from the assessed valúa
 
 *396
 
 tion as determined by the lower court of real estate at No. 1549 Hamilton Street in the City of Allentown. The dwelling house thereon, occupied by appellees, has some value, and th,e rear portion of the land fronting on Sixteenth Street is available for building purposes. The property was assessed at $83,400 and an appeal to the Board of Revision of Taxes and Appeals was dismissed. The lower court upon sufficient competent evidence found the actual value of the real estate, at the time of the assessment, to be $30,000 and that finding must be accepted as determining value for assessment purposes.
 

 The order of the lower court, determining assessed value at a percentage of actual value, is modified and the assessment for tax purposes is fixed at $30,000.
 

 [1]
 

 EXHIBIT A. All real estate sold between March. 20, 1937 and February 29, 1940 by Liberty ' Trust Company Mortgage Pool and by Liberty Building & Loan Association acquired by them either by foreclosure or by conveyance in satisfaction of mortgages held by them. Of the 32 properties, three were sold in 1940 after the date of the assessment. They apparently are all residence properties and there is no testimony to the contrary. No ratio pattern is disclosed by comparison of assessments to
 
 *390
 
 sale prices; assessments range from 52% to 137% of sale prices; the average is about 77%. In five instances the assessments exceeded the sale prices.
 

 EXHIBIT B. All real estate sold by Security Building Association between January 1937 and March 1940, similarly acquired. Two of the sixteen properties were sold after the assessment. Assessments range from 52% to 129% of sale prices; the average is about 75%. There is no testimony as to the character of the properties.
 

 EXHIBIT 0. Twenty-one pieces of improved real estate, acquired by foreclosure, sold by Penna. Loan & Building Association and eight parcels sold by Mutual Loan
 
 &
 
 Building Association between April 1, 1937 and March 2, 1940. Two of the properties were sold in 1940, one of them an apartment building. There is no evidence of the nature of the other properties. One sold for 112% of the assessment. The average assessment was about 72% of average sale price.
 

 EXHIBIT D. Sixty-seven properties sold by Home Owners Loan Corporation between January 20, 1939 and February 15, 1940. Eight sales were made in 1940. Only one was commercial, assessed for 52% of the sale price. Five were sold for less than the assessed valuations. Highest sale price was $7,800. The average assessment was about 73% of the average sale price.
 

 EXHIBIT E. Thirty-five properties sold by John W. Kessler, a real estate dealer, between January 20, 1937 and November 24, 1939. All properties were residential except one vacant lot. Nine were sold at or for less than assessed values. Highest price paid, $7,500. Average assessment 79% of sale price.
 

 EXHIBIT F. Seven properties sold by Earl S. Kester, Agent, between December 1, 1938 and December 12, 1939. Assessments range from 48% to 72%% of sales prices; average 58%. All properties residential, situated in outlying districts of the city.
 

 EXHIBIT G-. Twenty-nine properties sold by Roscoe Q. Jarrett, Agent, between January 1, 1939 and January 1, 1940. Three were sold for less than the assessments. Assessments range from 19% to 150% of sale prices; average about 59%. Three were commercial properties; the assessed value of 716 Hamilton Street is 45% of the sale price,
 

 
 *391
 
 EXHIBIT H. Fourteen properties, in the 17tb and 18th wards of the city, all residential, new houses, sold by the builder between June 18, 1939 and November 20, 1939. The assessments range from 42% to 65% of sale prices; average 51%.
 

 Duplications in the above exhibits reduce the total number of sales to 207.