## Phinney et ux., Appellants, *v.* Board of Revision of Taxes and Appeals.

102

Argued April 14, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*H. C. Wasson*, with him *Nesbit & Wasson*, for appellants.

*Robert M. Dale*, for appellee.

OPINION BY HIRT, J., July 17, 1947:

In September 1942 Willis W. Phinney bought the land, in the City of Franklin, involved in this appeal. He paid $10,000 for the property and took title in his name and that of his wife. The premises consist in two adjoining parcels of land in the heart of the most desirable residential section of Franklin. The property as a whole extends 300 feet along Fifteenth Street with a frontage also of 112 feet on Liberty Street and 75 feet on Elk Street. There were two large buildings on the land; a three-story brick dwelling facing Liberty Street and a brick barn on the Elk Street lot. For the triennium beginning with 1943, the board of revision of taxes for the City of Franklin assessed the Liberty Street property at $12,000 for city tax purposes and the Elk Street lot,

with the improvements, at $2,500. On appeals, the lower court, in its final order, reduced these assessments to $10,000 and $2,000, respectively. Appellants here contend that these amounts are in excess of the actual value of the premises and that, in any event, the assessments as determined by the lower court must be further reduced to 65% of their actual values to conform with a ratio between actual and assessed valuations adopted by the assessor and the board in computing assessment values for tax purposes throughout the city.

The buildings on the premises were constructed prior to 1905 at a cost many times the amount which appellants paid for the property. They are substantial and conform with architectural standards of the era to which they belong. The structures are not of unattractive design and were well built; depreciation has come, for the most part, from obsolescence. The size and bulk of the house has been an important factor in reducing its market value. The trend of the demand, for a number of urgent reasons, has been to smaller and less pretentious homes. The market for large houses everywhere is limited and such properties usually can be sold only when price is sacrificed.

The Act of June 23, 1931, P. L. 932, as amended May 25, 1939, P. L. 225 controlled the 1943 triennial assessment in Franklin. The standard of assessment of lands under that amendment was "the actual value", i. e., the market value thereof. *McConomy Tax Assessment Case,* 156 Pa. Superior Ct. 264, 40 A. 2d 99. At the hearing de novo in the court below, two qualified real estate dealers testified on behalf of appellants that the actual value of the whole property was but $10,000 at the time of the assessment. The weight of the opinion as to value as expressed by one of the witnesses, however, was impaired by his admission on cross-examination that the market value of the bare land, exclusive of buildings, was in excess of that amount. The testimony of appellant, Willis

M. Phinney, in itself tends to support the conclusion of the lower court. He testified that there were 31 rooms in the dwelling house, exclusive of bath and toilet rooms; that it could be converted "very readily" into an apartment house and he bought it for that reason. At a cost of $3,000 he subdivided the house into five apartments and he converted the barn into a seven car garage with an expenditure of $400. Appellants occupy one apartment in the house; the remaining apartments have been profitably rented to tenants, yielding an adequate return on a capitalization in excess of the amount of the assessments. The adaptability of the buildings to these uses gave value to the land. All uses "to which the property is adapted and might in reason be applied" must be considered in determining market value. *Appeal of Penna. Co. for Ins. on L. & G. Annuities,* 282 Pa. 69, 127 A. 441. The hearing judge was familiar with the property and knew the witnesses. The reductions in the assessments ordered by the lower court are all that appellants were entitled to on the testimony in this record. There was no error in the findings and the court's ultimate determination of values cannot be disturbed. *P. & R. C. & I. Co. v. North'd Co. Com'rs.,* 323 Pa. 185, 186 A. 105.

But appellants contend that it is established by the weight of the evidence that assessments of real estate generally throughout Franklin were computed on the basis of 65% of actual value. Accordingly they say that, in the interest of equality, they are entitled to a reduction in the assessment even if it be conceded that the order reflects the actual or market value of the premises. The weight of the evidence is before this court but we may not reverse the lower court except for clear error. *Westbury Apartments, Inc., Appeal,* 314 Pa. 130, 170 A. 267.

It is settled law that "where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law [Article IX, section 1, of

our State Constitution] the latter requirement is to be preferred as the just and ultimate purpose of the law." The rule was thus stated in *Cumberland Coal Co. v. Board of Revision, Etc.*, 284 U. S. 23, 52 S. Ct. 48, in an appeal from *Greene County Coal Tax Appeals*, 302 Pa. 179, 152 A. 755. "The principle of uniformity is the guide post pointing the way for the local assessor . . . and for the courts in making such orders and decrees as may seem equitable and just on appeal": *Lehigh & Wilkes-Barre Coal Co. v. Luzerne Co.*, 225 Pa. 267, 74 A. 67. But to reduce an assessment of land below its actual value in the interest of equality, there must be proof by a preponderating weight of the evidence of a fixed ratio, of assessment of lands, to market value, uniformly applied throughout the taxing district. That proof is lacking in this case. One qualified real estate dealer, called by appellants, compared city assessments, for the same triennium, of 194 properties in Franklin with his opinion of their actual value in each instance. Another qualified dealer made similar comparisons as to 150 pieces of Franklin real estate. The composite testimony of these two witnesses discloses a range of ratios of assessment to market value varying from 27% to 266%. Stated otherwise, assessments according to these witnesses were not uniform but varied from 1/2 to 2 1/2 times market or actual value. Manifestly all that this testimony tended to establish was an utter lack of uniformity in the assessments of 344 properties in Franklin. This testimony, if valid, certainly presented a field for tax equalization by the board of revision of taxes (on the authority of Article XXV, section 2516 of the Act of June 23, 1931, P. L. 932, 53 PS 12198-2516) but did not supply a basis for reduction of the assessments questioned by these appeals. The testimony is to the effect, not that appellants' land was assessed too high, but that other lands, in the opinion of these witnesses, were assessed still higher and others, too low. This is

not a ground for revaluation of property for tax purposes. *Mineral R. & M. Co. v. County Com'rs.*, 241 Pa. 339, 88 A. 496. Assessments may be reduced in the interest of equality by virtue of the mandate of the constitution only upon proof of a *uniform* standard of valuation of general application throughout the taxing district. *Mineral R. & M. Co. v. Commrs.* (*No. 1*), 229 Pa. 436, 78 A. 991. In the absence of such proof in this case the standard of actual or market value obtains. *Allentown's Appeals,* 147 Pa. Superior Ct. 385, 24 A. 2d 109.

In the present case there was competent testimony, sufficient both in quantity and quality to support the determination of the lower court as to the value of the land for assessment purposes. The final orders, supported as they are by the findings and the weight of the evidence, are conclusive on us.

Orders affirmed.