## Hedden Estate

*Neville B. Shea,* for appellants.

*R. Lawrence Coughlin,* county solicitor, and *Donald Mills,* assistant county solicitor, for board of assessment.

PINOLA, J., January 19, 1950.—Raymon R. Hedden and Dorothy Hedden, his wife, have appealed from the assessment of $7,764 fixed on their property situate on Machell Avenue, Dallas Borough, by the board for the assessment and revision of taxes for the triennial period of 1949-1951.

They purchased the land in 1948 and constructed a modern, ranch-type dwelling house about 60 feet by 40 feet in size. Following the receipt of notice from the board that the building had been assessed at $25,000 and the land at $264, they appeared on the fixed appeal day to complain. The board reduced the assessment to $7,500. Still dissatisfied, appellants, on May 7, 1949, filed the appeal which is now before us.

Before considering the correctness of the valuation, we must dispose of appellants' contention that the assessment is illegal because it was made by the board and that its action was arbitrary.

Appellants contend that the assessment is to be made by the field assessor and that the board has no right to dictate the amount to him. Without conceding that the board did dictate the amount to the field assessor, the county solicitor contends that under the law the board makes the assessment.

At the hearing appellants called Richard McGuigan, a member of our bar, who testified that when he first examined the assessment blotter for Dallas Borough in the office of the assessors, the valuation on the building in question was $2,500 followed by an additional zero which showed the effect of attempted erasure. Upon a later examination, the additional zero was firmly inserted, so that the building assessment read $25,000.

Francis G. Youngblood, who has been the field or subordinate assessor for the district since July 1, 1940, testified that in September 1948 he placed a valuation of $264 on the land and $2,500 for the building. Later, when he visited the property with the three members of the board of assessment and the chief clerk, he was told by Mr. Moore, one of the board members, to fix the valuation on the building at $75,000. The next day at the assessors' office he was advised by Mr. Knies, another board member, to fix the value at $25,000.

This he did. He at no time told the members of the board that he had originally placed a valuation of $2,500 on the building.

The Act of May 22, 1933, P. L. 853, sec. 402, as amended, 72 PS §5020-402, which governs 'when not in conflict with the Act of 1931, provides that:

"It shall be the duty of the several elected and *appointed assessors* . . . to assess, rate and value all objects of taxation . . . according to the actual value thereof. . . ."

Under section 3 of the Third Class County Assessment Law of June 26, 1931, P. L. 1379, 72 PS §5344, it is the duty of the board for the assessment and revision of taxes ". . . to make and have supervision of the making of all assessments of persons, property, and occupations now or hereafter made subject to assessment for taxation for county, borough, town, township, school, and poor purposes."

Section 4 of that act (72 PS §5345) requires the board to divide the county into convenient districts and to "appoint *subordinate assessors* for said districts."

Under section 5 (72 PS §5346), the board is authorized to ". . . prescribe rules and regulations for the conduct of said subordinate assessors, determine when precepts shall be issued to them, and when they shall make returns to said board, both in triennial and intermediate years."

Section 6 (72 PS §5347) governs the actual assessment. It requires that:

"*The field assessors shall make the* triennial *assessment* of all property and persons . . . and, in so doing, shall view all properties in their district taxable for said purposes. . . . *They shall* also have and *possess*, except as modified by this act, the *same powers* and perform the same duties and be subject to the same liabilities *as* are now or shall hereafter be *conferred* or imposed *upon borough*, ward, town, and township

*assessors with respect to making assessments* and valuations for taxation purposes. . . ." (Italics supplied.)

The functions of the board are governed by section 7 (72 PS §5348), which provides that:

*"The* said *board shall examine and revise the* said triennial *assessments* and valuations, increasing or decreasing the same as in their judgment may seem proper. . . . After such revision, the board shall fix convenient times for the hearing of appeals on said assessments and valuations, *and,* after the hearing of said appeals and the making of whatever changes may be considered proper, *the valuations as* so *ascertained and revised, unless changed* in the manner hereinafter provided, *shall stand as the assessments* for taxation for the aforesaid purposes until the next triennial assessment." (Italics supplied.)

Under section 9 (72 PS §5350) :

"After action on such assessments by said board, *any dissatisfied taxable may,* within thirty days from the final fixing of his assessment and valuation, *appeal* therefrom *to the court of* common pleas . . . ; and it shall be the duty of the court at once to hear and determine said appeal, and, if necessary, to make such changes therein as may be right and proper. . . ." (Italics supplied.)

The Act of March 24, 1905, P. L. 47, governing Luzerne County, which preceded the Act of June 26, 1931, is, for practical purposes, the same as the Act of 1931. Under that act, Mr. Justice Elkin, who decided many assessment cases at about the same time, held in D. L. & W. R. R. Co. v. Luzerne County Commissioners, 245 Pa. 515, that the assessment was made by the subordinate assessors. He said (p. 518) :

"Nothing contained in the Act of 1905, applicable to Luzerne County, changes the basis of determining assessable value. Under this act *the subordinate assessors make the assessments* and valuations, and it is

made the duty of the board of assessment to 'examine and revise the said valuation increasing and decreasing the same as in their judgment may seem to be proper or adding thereto such property or subjects of taxation as may have been omitted.' It will thus be seen that by the express terms of the act the duties of this board are limited to an *examination and revision* of the valuations returned by the subordinate assessors increasing or decreasing the same as in their judgment may seem proper. Beyond this the board of assessment cannot go except to add taxable property that may have been omitted by the subordinate assessors. The act is too plain to be misunderstood and there should be no difficulty in determining what the board may and may not do." (Italics supplied.)

In many other decisions the courts have assumed that the assessment is actually made by the local assessor.

In Lehigh & Wilkes-Barre Coal Co. v. Luzerne County, 225 Pa. 267, the court said (p. 270) :

"The principle of uniformity is the guide post pointing the way for the *local assessor* who makes the assessment in the first instance; . . . for the board of revision when at the triennial assessment valuations are revised, corrected and equalized; and for the courts in making such orders and decrees as may seem equitable and just on appeal." (Italics supplied.)

This language was cited with approval in Jursics' Appeal, 149 Pa. Superior Ct. 523, and Matson's Appeal, 152 Pa. Superior Ct. 424.

While considering the question of the use of a ratio, the court said in Allentown's Appeals, 147 Pa. Superior Ct. 385, 388:

"As to the latter aspect, there is no direct evidence that the *assessors* used a percentage of actual values as a basis for assessments. . . ."

And in Comphius et al. v. Bradford County Board of Assessment and Revision of Taxes, Bradford County Appeal, 163 Pa. Superior Ct. 302, the court referred to the lack of evidence that "the assessor of this property, or any of the other assessors, either individually or collectively, assessed properties throughout the district on a percentage basis. . . ."

In Rockhill Iron & Coal Co. v. Fulton County, 204 Pa. 44, it was argued that the Act of 1889, authorizing appeals from the revision of valuation by the county commissioners to the court of common pleas, was unconstitutional because the subject was not clearly expressed in the title of the act. It was argued that the title was misleading; that the appeal allowed is not from the assessment made by the township assessor but from the decision of the county commissioners revising his assessment. Mr. Justice Dean said (p. 50) :

"This is hypercritical; the assessment made by the assessor remains the assessment, no matter whether raised or lowered by the commissioners or the courts until final adjudication; it may become an altered assessment at the final decree, but nevertheless it is still the assessment directed by law, although not in exact accord with the act of the first officer making it. It is so understood and so called in both common and legal parlance. . . ."

Furthermore, the Act of June 26, 1931, sec. 6, makes it a misdemeanor for the field assessor to fail to make assessments as provided by law. It is he who is held responsible for the assessment, not the board.

There is no merit to the contention of the county solicitor that the assessment is made by the board when it certifies the valuations to the municipal subdivisions.

Section 7 of the Act of June 26, 1931, directs the board to "examine and revise the said triennial assessments and valuations" and after such revision "the

valuations as so ascertained and revised, unless changed in the manner hereinafter provided, shall stand as the assessments . . . until the next triennial assessment."

And section 12 (72 PS §5350c) provides that:

"After the hearing of any objections thereto and the making of any changes that may be deemed proper, the valuations as so ascertained shall, unless changed in the manner herein provided, stand as the valuations for assessments for aforesaid purposes until the next triennial assessment."

There is no requirement of certification.

If the assessment in this case had been made by the board, we would have to declare it illegal. But, in fact, it was not made by the board.

The field assessor testified that he fixed the assessment at $25,000 in the office of the assessors on the advice of the board. It is obvious that it was not at the direction of the board since it had taken no action as such.

In the opinion of the field assessor the property had a market value when completed of $25,000 and the building alone a market value of $23,800. While he originally intended upon completion of the house to add $1,000 to the $2,500, making a total of $3,500 for the building, he never did so. The return actually made by him showed an assessment of $25,000 for the building. That is the amount set forth in the notice sent to appellants and that is the amount which was considered at the hearing and reduced to $7,500. If the field assessor felt that it was too high, it was not only his right to reduce it, but it was his duty to do so.

We must and do overrule the objection to the assessment on the ground that it was made by the board.

In considering the merits of the case, we must bear in mind that "the correctness of the assessment as made by the Board of Assessment . . . is to be measured by

the standard established by the legislature. The General County Assessment Law, section 402, provides, 'It shall be the duty of the several elected and appointed assessors . . . to assess, rate and value all objects of taxation, whether for county, city, township, town, school, poor or borough purposes, according to the actual value thereof, and at such rates and prices for which the same would separately bona fide sell' '' : Hudson Coal Company's Appeal, 327 Pa. 247, 251.

The board examines and, if necessary, revises the assessment, and "on appeal it is the duty of the court, having due regard to the valuation and assessment of other real estate in the same district, to first ascertain the ratio of assessed to actual value applicable generally throughout the district, and then, when the actual value of the tract or tracts under consideration has been determined, this ratio should be applied. When this is done the result fixes the assessed valuation": Mineral R. R. & M. Co. v. Commissioners, 229 Pa. 436.

At the hearing, the presentation of the record showing the appraisement filed and revised by the board, established a prima facie case. The fairness of the revised valuation being presumed, the burden of proving the incorrectness of the conclusion reached devolved upon appellants: DuBois' Appeal, 293 Pa. 186.

They called Francis Youngblood, the field assessor. He testified that he has known of all sales of property in Dallas Borough since 1940, and that in his opinion the building when completed would have a fair market value of $23,800.

Thomas Hart, a competent realtor, testified that in his opinion the building would have a market value of $27,500. No testimony was presented by the board, and therefore, we are bound by the testimony of the two witnesses, which we consider reliable.

The county solicitor contends that since the assessment of the building, to wit, $7,500, is less than the

market value, in the absence of formal adoption of a ratio by the board, appellants cannot complain nor can they ask that an average ratio, determined from sales of properties, be applied.

Mr. Hart compiled a list of sales and by a comparison of sales prices to assessments, determined a ratio in each case and then an average ratio for the group. Whether this testimony would be competent, however helpful, would be a question for consideration were it not for the fact that in this case the field assessor, Francis Youngblood, actually used a ratio of assessment to actual value; he used 2 percent of the market value in 1942 for the assessed value.

Mr. Youngblood also testified that although the property values in the borough had increased from 40 to 45 percent since 1942, he at no time raised the assessments. Therefore, in order that the assessment made be uniform, he would be duty bound to take that fact into consideration. Although he did not figure it mathematically, he intended to add $1,000 on completion of the property to the $2,500 making a total for the building of $3,500.

It was agreed at the adjourned hearing that if Thomas Hart were called, he would testify that between the years 1942 and 1948 there was an increase in the market value of private homes in Dallas Borough of between 50 and 60 percent.

From all the testimony we conclude that there was at least an increase of 50 percent and therefore, the comparable valuation according to the 1942 basis of the figure of $27,500 placed upon the building by Thomas Hart, would be $\frac{2}{3}$ of that amount, or $18,333, and an assessment of 25 percent of that sum would be $4,583. This is the correct process for determining the assessment of this building if one is to heed the mandate of the court in Cumberland Coal Co. v. Board of Revision, etc., 284 U. S. 23, that between the standard

of true value and uniformity required by law, the latter requirement is to be given effect "as the just and ultimate purpose of the law." So, too, this result must follow if we comply with the requirement of the Constitution of Pennsylvania, sec. 1, art. IX, that "all taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

Since the close of the hearing we have learned the results of the investigation by the State Tax Equalization Board in the territory covered by Mr. Youngblood. From its report, dated May 31, 1949, to the County Commissioners and the Board of Assessors of Luzerne County, it appears that in Dallas Borough the assessed valuation of taxable real property is 18.23 percent of the market value of the taxable real property, in Dallas Township it is 18.96 percent of the market value of the taxable real property, and in Kingston Township it is 18.62 percent of the market value of the taxable real property. This result corroborates the testimony of Mr. Youngblood and is proof not only of his capability but the honest performance of his duties. Truly, the assessments made by him in these three districts approach the ideal of uniformity.

Whether the board under its right "to prescribe rules and regulations for the conduct of (the) subordinate assessors" can prescribe the ratio to be used by them, we need not consider at this time because the board has not taken any such action. We do recall that in Garber's Appeal, 17 Dist. R. 464, although the county commissioners instructed the assessors to assess at the actual value as required by the act of assembly, it appeared that the instructions were not obeyed implicitly and that the assessments in the county were made on a basis of from 70 to 85 percent of actual or market value. Judge Shull said (p. 465) :

". . . this maintains throughout the county to such prevailing extent as to amount to a custom. This condition or custom then existing forms the index to guide us in the determination to be reached."

From all the testimony we make the following

### Findings of Fact

1. Appellants are the owners of a lot of land situate on Machell Avenue, Dallas Borough, 88 feet wide and 148 feet deep, improved with a one-story ranch house.

2. The assessment fixed on the land by the field assessor, Francis Youngblood, is $264.

3. The assessment fixed on the building by the field assessor, Francis Youngblood, was $25,000.

4. On appeal by the owners to the board of revision and appeals, the board revised or changed the assessment on the building, reducing it to $7,500.

5. The fair market value of the building is $27,500.

6. The field assessor used 25 percent of actual value in 1942 for assessments in Dallas Borough.

7. The present value of residential properties in Dallas Borough are 50 percent higher than in 1942.

8. The assessment is in excess of 25 percent of the adjusted market value of the building.

9. A just, equal and impartial assessment and valuation of said real estate as a whole, at the time of and for the purposes of the triennial assessment for the years 1949-1951, is $264, plus 25 percent of ⅔ of $27,500, or $4,583, making a total of $4,847.

And we reach the following

### Conclusions of Law

1. The assessment of appellants' real estate at $7,764 for the triennial years 1949-1951, is unjust, unequal and not uniform as prescribed by statute and the Constitution.

2. This assessment is not in compliance with the law.

3. The law applicable to the facts found impels a revision and reduction of this assessment to $4,847.

Accordingly, we enter the following

*Order*

Now, January 19, 1950, upon consideration of the foregoing appeal, it is ordered, adjudged and decreed that the appeal of Raymon R. Hedden and Dorothy Hedden, his wife, from the revised assessment of real estate made by the board for the assessment and revision of taxes from the triennial assessment 1949-1951 be sustained, and that the total assessment of the said property be and the same is hereby fixed as follows: For land, $264; for building, $4,583; total, $4,847.

The prothonotary will enter this order and notify counsel, and if no exceptions are filed thereto within 10 days from the receipt of said notice, it will become final.