## Nesbitt Appeals.

276

Argued March 3, 1952. Before RHODES, P. J., RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ. (HIRT, J., absent).

*Arthur H. James,* with him *Arthur Silverblatt,* for appellant.

*R. Lawrence Coughlin,* County Solicitor, with him *Donald S. Mills,* Assistant County Solicitor, for appellee.

OPINION BY DITHRICH, J., July 17, 1952:

Abram Nesbitt, 2nd, filed appeals from the 1948 revised assessment and the 1949 triennial assessment of his real estate located in Dallas Township, Luzerne County. Following dismissal of the appeals by the Board for the Assessment and Revision of Taxes and the Court of Common Pleas of Luzerne County further appeals were taken to this Court. While the appeals were heard together in the court below, they were decided in separate opinions. However, the assessments for both years being identical and the same issues being involved in both appeals, records and briefs were consolidated for review by this Court and, therefore, the appeals will be considered together and disposed of in this opinion.

In substance the court below found the following: (1) the fair market value of appellant's property in 1948 and 1949 was $77,993; (2) the property was assessed in those years at $32,114; (3) the assessments were based on 25% of the 1942 market value of the property; (4) no change was made in the assessments although from 1942 to 1948 the property increased 45% in market value. It concluded that the assessments were in compliance with the law.

Appellant contends that the court erred in not applying to his real estate the uniform standard of valuation in general application throughout the taxing district and that the assessments in question, therefore, were not in compliance with the constitutional mandate of uniformity in taxation. It is argued that since there is no figure in the record representing 1942 market value and since a uniform standard of valuation of 25% of 1942 market value was proved, the 1942 market value would have to be determined by computation in order to correctly apply the uniform standard in arriving at the 1948 and 1949 assessments.

It is argued further that in view of the court's findings relating to the market value of the property in 1948 and 1949 and the increase in its market value since 1942, the 1942 market value could only be the product of 100/145 x $77,993. It would follow that an application of the uniform standard of valuation would require the multiplication of the quantity (100/145 x $77,993) by 25%. According to appellant the resulting assessment would be $13,413 or 17.2% of the market value in 1948 and 1949.

The argument, while persuasive, cannot prevail in view of the facts. Francis G. Youngblood, the field assessor for Dallas Township for the years 1940 to September, 1948, made the 1948 assessment and did most of the work on the 1949 assessment. Called as a witness by appellant, his testimony, accepted by the court, was that in the year 1942 in making his assessments in Dallas Township he used a ratio of assessment to market value of 25%. In addition, he testified that from 1942 on he generally maintained the same assessments in the township, basing them on 25% of 1942 market values. This testimony was sufficient, not only to establish the uniform standard of valuation employed in the taxing district but also to establish that the standard was applied to appellant's real estate. Hence, the assessment of $32,114 must be taken to represent 25% of the 1942 market value and, consequently, it was unnecessary, in our opinion, for the court below to compute the assessment in the manner proposed.

Appellant seeks to fortify his argument by citing and printing as an appendix to his brief the opinion of the court *In Re Assessment and Valuation of Hedden,* 41 Luz. L. R. 79, a case decided by the court below in January of 1950. In that case, which involved real estate in Dallas Borough, a municipality contiguous to Dallas Township, the court found that the ratio used

in the borough for the 1949 triennial assessment was 25% of 1942 market value and that the market value of real estate at the time of the assessment had increased by 50% since 1942. The court then determined the 1942 market value of the Hedden property by using the identical method of computation proposed by appellant in the case before us, viz., 100/150 x 1949 market value, to which the 25% ratio was applied to fix the assessment. However, Judge PINOLA readily distinguished that case from the case at bar, stating: ". . . the sub-assessor had no alternative but to use such a formula in the case of new construction because that building [having a market value of $27,500] was not in existence in 1942. When the appellant asks that such a formula be applied to his property, he obviously forgets that the formula was only used to determine what is 25% of the 1942 market value in such a case. In the appellant's case this amount was already fixed, and therefore, there is no need to resort to any formula."

Appellant contends, however, that a failure to employ the formula he advances eliminates completely "the important question which is *present day market value.*" But the all-important question where the assessed valuation is less than present-day market value, as here, is uniformity. What was said in *Delaware, Lackawanna & Western Railroad Company's Tax Assessment (No. 1),* 224 Pa. 240, 247, 248, 73 A. 429, is apposite: "However, the constitution and the act of 1889 have emphasized the principle of uniformity as more important than the standard of valuation. The assessed valuation should as nearly as possible represent the actual value, but it must be uniform no matter whether the proper standard is followed or not. It is a well-known fact that from the beginning of our state government to the present time in nearly every section of the commonwealth the assessed value of

property is ridiculously low as compared with actual value. No doubt the framers of the constitution had this thought in mind. when they wrote into the fundamental law that all taxes must be uniform on the same class of subjects."

In *Phinney v. Board of Revision, etc.,* 161 Pa. Superior Ct. 101, 53 A. 2d 889, this Court, speaking through HIRT, J., said (pp. 104, 105) : "It is settled law that 'where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law [Article IX, section 1, of our State Constitution] the latter requirement is to be preferred as the just and ultimate purpose of the law.' The rule was thus stated in Cumberland Coal Co. v. Board of Revision, Etc., 284 U. S. 23, 52 S. Ct. 48, in an appeal from Greene County Coal Tax Appeals, 302 Pa. 179, 152 A. 755. 'The principle of uniformity is the guide post pointing the way for the local assessor . . . and for the courts in making such orders and decrees as may seem equitable and just on appeal': Lehigh & Wilkes-Barre Coal Co. v. Luzerne Co., 225 Pa. 267, 74 A. 67."

At the hearing before Judge PINOLA, Harry F. Goeringer, a real estate expert, testified with reference to the assessments and market values of nineteen properties in Dallas Township. The average ratio of assessment to market value was 16.8%. George M. Huey, also a real estate expert, testified relative to six of the same properties. From that testimony an average ratio of 13% appears. An analysis of twenty other properties in the township, prepared by Goeringer, revealed ratios varying from 6.2% to 36.3%. The average ratio was 19.8%. Three properties were assessed at less than 10% of market value, ten between 10% and 20%, and six between 20% and 36.3%. One was not rated. But it must be noted that 1,782 properties

were assessed in 1948 in Dallas Township and in 1949 the properties assessed numbered 1,843.

The court below excluded figures of the State Tax Equalization Board which were based on a two-year study of sales and sales prices, taken from the Recorder of Deeds' records, and corresponding assessments. By stipulation the board's study revealed that in Dallas Township for the year 1949 the ratio of total assessed value to total sales was 18.96%.

Appellant, while conceding that the testimony of the real estate experts standing alone would not be competent to meet the burden of proving the adoption of a uniform ratio, contends that, taken in connection with Youngblood's testimony, their testimony and the ratio found by the Equalization Board constitute "further proof and corroboration" of a "uniform ratio of roughly the ratio contended for by appellant of 17.2 per cent." By this we understand appellant to mean that a uniform ratio of 17.2% of *present* market value was used in the taxing district in fixing the 1948 and 1949 assessments. Of course it was incumbent upon him to establish the uniform use of that ratio by a preponderating weight of the evidence. *Phinney v. Board of Revision, etc.,* supra; *Bradford County Appeal,* 163 Pa. Superior Ct. 302, 60 A. 2d 371; *Buchman Tax Assessment Case,* 164 Pa. Superior Ct. 137, 63 A. 2d 136. This he did not do. As conceded by appellant, if there had been no testimony, such as Youngblood's in this case, of a uniform ratio having been used, the testimony of the real estate experts and the Equalization Board's figures would certainly be incompetent to meet the burden of proving the adoption of a uniform ratio. See *Phinney v. Board of Revision, etc.,* supra, and *In Re Assessment of Williams,* 41 Luz. L. R. 143. We fail to see how Youngblood's testimony can make it competent. True, he testified

that a uniform ratio was used, but what is of greater significance, he stated what that ratio was. Bearing in mind what we have already said, it is clear that the standard of valuation proved was not a ratio related to present market value but a ratio related to 1942 market value. It was the latter ratio, according to Youngblood's testimony, which was uniformly applied throughout the taxing district.

Decrees affirmed.