## Barr et ux. v. Board of Assessment and Revision of Taxes of Bucks County

*Grim, Cadwallader & Darlington*, for appellants.

*I. J. Vanartsdalen*, for Board of Assessment and Revision of Taxes.

SATTERTHWAITE, J., November 6, 1953.—In this appeal by the property owners from the action of the Board of Assessment and Revision of Taxes of Bucks County, after hearing, the following are made as

*Findings of Fact*

1. Appellants, Harry Barr and Adele Barr, are the owners of a certain dwelling house and lot, situate in

the third ward of the Borough of Morrisville, County of Bucks and State of Pennsylvania, known as 320 Glenside Avenue.

2. These premises were rated and assessed in July 1952 for taxation purposes for the year 1953 by the chief assessor of Bucks County at the sum of $3,150, consisting of $225 for the lot of land and $2,925 for the dwelling and improvements thereon.

3. The established predetermined ratio of assessed value to actual value in the County of Bucks for 1953 assessments was 30 percent, of which proper notice was given.

4. The actual value of the premises in question as found by the chief assessor and upon which the assessment was based was $10,500, consisting of $750 for the lot of land and $9,750 for the dwelling and improvements thereon.

5. Appellants made due and timely appeal from the assessment so made by the chief assessor to the Board of Assessment and Revision of Taxes of Bucks County which, by order duly entered on October 6, 1952, sustained the assessment after hearing.

6. The within appeal to this court from the order of the Board of Assessment and Revision of Taxes of Bucks County was timely filed by appellants on December 5, 1952.

7. The actual or market value of the premises in question was in excess of $10,500, the actual value found by the chief assessor.

8. There was no sufficient evidence of any consistent, uniform and generally applied departure from the aforesaid ratio of assessments to actual value of properties throughout the County of Bucks in general or the third ward of the Borough of Morrisville in particular, or any legally sufficient evidence of discrimination against appellants.

## Discussion

This is one of five similar cases, all involving the propriety of assessments made in July 1952 for 1953 tax purposes of real estate located in the development known as Highland Park in the third ward of the Borough of Morrisville. This and the other cases (being December term, 1952, nos. 50, 51, 52 and 53) were all heard at one time with much of the evidence being common to all five and this discussion will be a common explanation for the decisions entered in all five cases.

Appellants in this case, as in the other four, complain that their assessment should be reduced, not because it is excessive in relation to the actual value of the property involved, but rather because other particular properties in the vicinity, of equal or greater worth, were assessed at lower valuations. The testimony of all the witnesses on both sides in each case established beyond any doubt that the real values of all of the properties in question were in excess of the actual values found by the chief assessor upon which the final assessments were based. Appellants contend, in effect, however, that they were discriminated against and hence there was a lack of uniformity, requiring a reduction of their respective assessments.

Historically, the legal basis for establishing the worth of property for tax assessment purposes was "according to the actual value thereof, and at such rates and prices for which the same would separately bona fide sell": Act of May 15, 1841, P. L. 393, sec. 4; General County Assessment Law of May 22, 1933, P. L. 853, sec. 402, 72 PS §5020-402; Fourth to Eighth Class County Assessment Law of May 21, 1943, P. L. 571, sec. 602, 72 PS §5453.602; Appeal of Pennsylvania Co. for Insurances on Lives and Granting Annuities, 282 Pa. 69; Bellevue-Stratford Company v. Philadelphia, 366 Pa. 278, 279-280, and cases cited. However, the practical administration of these stat-

utes demonstrated that considerations of uniformity were also involved under article IX, sec. 1, of the Constitution of Pennsylvania. Even though the assessment were not in excess of actual value, that fact alone did not necessarily preclude the property owner from relief if there were lack of uniformity: Hammermill Paper Company v. Erie, 372 Pa. 85, 99. Apart from questions of actual value, he might have had his assessment reduced to achieve uniformity and avoid discrimination, if assessments generally throughout the district were made at a percentage of actual value, and his was not, even though such a method would be a departure from the requirements of full actual value established by the statute: Allentown's Appeals, 147 Pa. Superior Ct. 385, 388. See also the amendatory Act of May 16, 1939, P. L. 143, amending section 402 of the General County Assessment Law, supra, the provisions of which were carried over into section 602 of the Fourth to Eighth Class County Assessment Law, supra.

But the property owner, on appeal from the board of revision, could not obtain a reduction of his assessment, on the ground of lack of uniformity merely by showing by way of comparison that a few certain specific properties had been underassessed; such were matters which could be adjusted only by the board of revision which has all assessments before it. This principle was definitely established in the comparatively old case of Mineral Railroad & Mining Company v. Northumberland County Commissioners (No. 1), 229 Pa. 436 (1911), and is controlling in the present proceedings. In that case it was stipulated that the county-wide ratio of assessments to actual values of real estate was generally 60 percent. Notwithstanding this agreement and its admitted application in determining the assessments appealed from, the property owner contended for a further reduction

of its assessments because other comparable properties were valued at lesser figures. The Supreme Court rejected this argument and upheld the assessments, saying, at pages 453-54:

"On appeal it is the duty of the court, having due regard to the valuation and assessment of other real estate in the same district, to first ascertain the ratio of assessed to actual value applicable generally throughout the district, and then, when the actual value of the tract or tracts under consideration has been determined, this ratio should be applied. When this is done the result fixes the assessed valuation. This was the rule applied by the court below in the present case. Appellant complains not because it did not have the benefit of this rule but because some other tracts of land in the neighborhood, the valuations of which were not appealed from, were assessed below the uniform standard. In other words, not by reason of failure to assess appellant's lands according to the uniform rule applied generally in the district, but because some tracts in the neighborhood were assessed below that standard of valuation. We agree with the learned court below that this position is not tenable. Appellant had the right to demand that its lands should be assessed according to the uniform standard of making valuations in the district, but this standard is determined by the general average of valuations and not by the assessment of a few tracts singled out for the purpose of showing undervaluation in some instances. As we view this record the valuation of the lands in question is not too high but the assessments of some other tracts called to our attention, not appealed from, are too low. This situation is beyond our control as courts can only compel a valuation of the lands under consideration to be made upon the basis of general uniformity in the district."

In view of the principles enunciated in this case, it became definitely established that the property owner, in order to show discrimination or lack of uniformity where his assessment was not in excess of actual value, had a very heavy burden of proof. He was required to show by the preponderating weight of the evidence a fixed ratio of assessments to market value, uniformly applied throughout the taxing district: Phinney v. Board of Revision of Taxes and Appeals, 161 Pa. Superior Ct. 101; Camphuis et al., trustees v. Bradford County Board of Assessment and Revision of Taxes, 163 Pa. Superior Ct. 302. If he failed to sustain this burden of proof, the only question left for consideration was the actual value of the property; inequalities between his assessment and that of other comparable real estate could be corrected only through the equalization powers of the board of revision: Phinney v. Board of Revision of Taxes and Appeals, supra; Buchman Tax Assessment Case, 164 Pa. Superior Ct. 137.

With this background of case law, the 1951 legislature passed the Act of January 18, 1952 (1951 sess.), P. L. 2138, which made substantial changes in the mechanics of assessing property for local taxation in fourth to eighth class counties, chiefly by relegating the local assessors in each municipality to information-gathering duties and requiring that the actual assessments be made by the chief assessor of the county. It also amended section 602 of the Fourth to Eighth Class County Assessment Law of May 21, 1943, P. L. 571, 72 PS §5453.602, so as to read as follows, the italicized wording being added by the 1952 amendment:

"It shall be the duty of the *chief* assessor to assess, rate and value all subjects and objects of local taxation, . . . according to the actual value thereof, and *in the case of subjects and objects of local taxation other than real property* at such rates and prices for which the

same would separately bona fide sell . . . *Real property shall be assessed at a value based upon an established predetermined ratio, of which proper notice shall be given, not exceeding seventy-five per centum (75%) of its actual value or the price for which the same would separately bona fide sell.* In arriving at such value, the price at which any property may actually have been sold shall be considered, but shall not be controlling. Instead, such selling price estimated or actual shall be subject to revision by increase or decrease to accomplish equalization with other similar property within the county. . . . *When assessing real property, the chief assessor shall also take into consideration the value of such property as indicated by the use of . . . cost charts and land values applied on the basis of zones and districts as well as the general adherence to the established predetermined ratio."*

While the 1952 legislation did make several drastic changes in the administrative provisions of prior assessment laws, we do not believe that the legislature either intended to or did change the prior law with respect to the principles involved in determining proper valuations. Manifestly, it gave belated sanction to the well-known and widespread practice of assessing real estate at an established fraction of actual value and required that such fractional ratio be definitely established by being publicly announced in advance. While it could not have constitutionally intended to do away with the well-established principles relating to uniformity of taxation previously mentioned, and this statute does not, therefore, of itself, preclude appellants' position, nevertheless, we do not believe that the legislature intended to overthrow the rationale of the Mineral Railroad & Mining Company and other cases, supra, requiring a reasonable basis for finding a *uniform and generally applied* departure, throughout the county, from actual value (or percentage of actual

value under the 1952 Act) in order to justify a conclusion of discrimination and lack of uniformity in the particular assessment under consideration.

Whether the standard be actual value as required by prior law, or a fixed percentage of actual value as required under the present law, equality will require the reduction of an assessment below actual value or stipulated fraction thereof only upon proof of a general and reasonably consistent variance therefrom throughout the county. This, in effect, was actually decided in the Mineral Railroad & Mining Company case, supra, where, as in the 1952 Act, a definite ratio of assessments to actual values was established and not questioned. In fact, the 1952 amendment to section 704 of the Fourth to Eighth Class County Assessment Law of May 21, 1943, P. L. 571, 72 PS §5453.704, with respect to the duties of the court on appeal in assessment cases, would appear to adopt almost in the exact language of the Mineral Railroad & Mining Company case the principles therein stated. This section, as so amended, provides for the entry of decrees by the court on appeals, "determining from the evidence submitted at the hearing what ratio was used generally in the taxing district and the court shall direct the application of the ratio so found to the value of the property which is the subject matter of the appeal and such shall be the assessment."

Accordingly, we believe that the Mineral Railroad & Mining Company case and those following it are still the law of this Commonwealth and must determine these appeals.

Appellants in the present cases relied entirely upon the testimony of a real estate expert for the purpose of showing his opinion as to the values of the five subject properties in comparison with six other properties in the same real estate subdivision, which testimony, if proper, would tend to show that the ratios of assess-

ments to actual values of the subject properties ranged from 26¼ percent to 30¾ percent, whereas such ratios in the selected comparison properties ranged from 14 percent to 20 percent. By way of contrast, and solely for the purpose of contradicting such testimony without conceding its competency, the board of revision offered the opinion of its expert on the same basis which tended to show that this ratio as to the subject properties varied only from 22 percent to 24 percent whereas the same ratio as to the nine comparison properties it had selected (only one being common to those selected by appellants) extended from a low of 12 percent to a high of 28 percent.

In other words, assuming without deciding that this method of proof was proper and competent, and disregarding rather substantial differences of approach and results between the two experts, this testimony merely proved that, of the combined 14 comparison properties which happened to be selected, the assessments varied from 40 percent of the county-wide established ratio to slightly more than 100 percent thereof with no consistent trend indicated. On such a narrow and restricted basis it is difficult to see how any more definite conclusion could be reached. Appellants have utterly failed to show any definite pattern, not only as to the 95,000 odd properties assessed throughout the county but even as to the undisclosed number of properties in the third ward of Morrisville Borough (which probably would not have been sufficient even had they done so). While they would not be required to produce evidence of value of *every* other property in order to show such a trend (Harleigh Realty Co.'s Case, 299 Pa. 385) and, in fact, the appellate courts have refused to decide how many other properties must be considered in this connection (Allentown's Appeals, 147 Pa. Superior Ct. 385, 393), nevertheless, whatever number may be necessary, the within record is totally

insufficient to demonstrate any reasonably uniform, county-wide ratio of assessments to actual value in comparison with which appellants' assessments would be out of line. Under these circumstances, the following quotation from the opinion in the Phinney case, supra, at pages 105-06, is particularly apposite and, in fact, controlling:

"Stated otherwise, assessments according to these witnesses were not uniform but varied from ½ to 2½ times market or actual value. Manifestly all that this testimony tended to establish was an utter lack of uniformity in the assessments of 344 properties in Franklin. This testimony, if valid, certainly presented a field for tax equalization by the board of revision of taxes . . . but did not supply a basis for reduction of the assessments questioned by these appeals. The testimony is to the effect, not that appellants' land was assessed too high, but that other lands, in the opinion of these witnesses, were assessed still higher and others, too low. This is not a ground for revaluation of property for tax purposes. *Mineral R. & M. Co. v. County Com'rs.*, 241 Pa. 339, 88 A. 496. Assessments may be reduced in the interest of equality by virtue of the mandate of the constitution only upon proof of a *uniform* standard of valuation of general application throughout the taxing district. *Mineral R. & M. Co. v. Commrs. (No. 1)*, 229 Pa. 436, 78 A. 991. In the absence of such proof in this case the standard of actual or market value obtains. *Allentown's Appeals*, 147 Pa. Superior Ct. 385, 24 A. 2d 109."

While we may discount some of the differences in the percentages shown in these cases as arising out of understandable variances in appraisal technique, yet the testimony discloses the type of situation which must be dealt with by the chief assessor and the board of assessment and revision of taxes in striving to achieve equalization. In fairness to them, it should be

pointed out that the within appeals arise out of assessments made during the first year of operation under the new legislation. They could not possibly have put into effect all the matters contemplated thereby within the short time involved. Compare Narehood v. Pearson, 374 Pa. 299. It is to be hoped that the permanent records system provided for by the Act of January 18, 1952 (1951 sess.), P. L. 2094, 72 PS §5453.306, §5453.307, will be set up well within the five-year period therein contemplated, and that such individual differences as shown in this case will thereupon disappear.

The county solicitor has requested that this court not only dismiss the appeal in the present (Barr) case, but actually raise the assessment above that fixed by the chief assessor and ratified by the board. Since neither the county nor any other municipality has intervened in this proceeding, and since no authority has been cited for such action, we decline to do so.

### Conclusions of Law

1. The assessment appealed from was proper and according to law.

2. The assessment appealed from was not excessive.

3. Appellants have failed to bear the burden of proving that the assessment appealed from was discriminatory or lacking in uniformity.

4. The assessment appealed from should be sustained.

5. The within appeal should be dismissed.

### Order Nisi

And now, November 6, 1953, the assessment herein appealed from is affirmed and sustained and the within appeal is hereby dismissed, each party to pay their or its own costs.

This order shall be entered by the prothonotary as an order nisi and shall become the final order of the court unless exceptions are filed hereto within 20 days from this date.